846 P.2d 202

**Thelma WEYGINT, Claimant–Appellant,**

v.

**J.R. SIMPLOT COMPANY, Employer, and State of Idaho, Industrial Special Indemnity Fund, Defendants–Respondents.**

**No. 18974.**

Supreme Court of Idaho.

Boise, September 1992 Term.

Jan. 28, 1993.

Goicoechea Law Offices, Chtd., Boise, for appellant. Lynn M. Luker argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent Simplot. Joseph D. McCollum Jr. argued.

Skinner, Fawcett & Mauk, Boise, for respondent Indus. Sp. Indem. Fund. William L. Mauk argued.

McDEVITT, Justice.

The appellant, Thelma Weygint ("Weygint"), at the time of the industrial accident, was a 50–year–old woman who had left school in the tenth grade, had had no other school experience prior to that accident, and whose work experience was

primarily in the agricultural sector. Weygint had worked as a migrant farm laborer, planting, picking, and harvesting fruits and vegetables. She had also worked in food processing plants and packing sheds, operating machinery and packaging farm products. Weygint had, on three different occasions, worked for a laundry and for a brief stint as a receiving room employee at K–Mart.

Weygint began working for the J.R. Simplot Company ("employer") in 1984. She performed various jobs in a potato processing plant, including trimming potatoes, packing, inspection, and clean-up work. On May 15, 1986, Weygint suffered an injury to her left knee while working at the J.R. Simplot Company. She slipped on a wet floor and fell, with her left leg bent beneath her. Weygint claimed of pain in her left knee and was initially seen by Dr. Day, who, after examining her, referred her to Dr. Collins, an orthopedic surgeon in Caldwell, Idaho. Dr. Collins described Weygint's condition following the accident, as a knee strain of an already arthritic knee. The arthritic condition resulted from a serious leg injury to Weygint when she was eleven years of age. This early injury further caused a space in the knee joint and a bending or bowing of the leg. Following a prescribed exercise program and recommended use of a knee brace to relieve discomfort, Dr. Collins released Weygint for light duty work and subsequently, in March of 1987, indicated that she was medically stabilized.

Following the injury, it was soon determined that the claimant could not return to work at J.R. Simplot Company, as she needed to avoid the wet, slick floors in the processing area.

Weygint begin working with the Industrial Commission (the "Commission") rehabilitation division on August 21, 1986, and continued through early 1990. Weygint completed a G.A.T.B. test and embarked upon a program to obtain a G.E.D. certificate.

Appellant had filed a notice of injury with the J.R. Simplot Company on May 29, 1986. Medical and temporary disability benefits were paid to the claimant, but disputes arose concerning Weygint's permanent disability. In April 1987, an application for hearing was filed.

An extensive course of formal and informal discovery was had by the parties and on March 19, 1990, a hearing was held in this matter before an Industrial Commission referee. As a result of the hearing, the Industrial Commission followed the recommendation of its referee, adopting his Findings of Fact, Conclusions of Law, and Award. The Commission concluded that the claimant was not totally and permanently disabled, and had not proved a *prima facia* case placing her in an odd-lot category. The Commission did find Weygint was permanently and partially disabled and assigned a rating of 10% of the whole person for that disability.

This award was based upon a finding by the Commission that Weygint was 60% disabled, but that only 10% was attributable to the industrial accident concerned in this matter, apportioning the balance of the disability to the preexisting impairment. The Commission apportioned the non-medical factors, in approximately the same proportion as the physical impairment.

Claimant appealed from the Findings of Fact, Conclusions of Law, and Award of the Commission and raises the following issues:

1. Does the evidence, as a matter of law, establish a *prima facie* case of odd-lot disability so as to shift the burden to the employer and Industrial Special Indemnity Fund ("ISIF") of presenting an actual job which the claimant has the ability to perform and a reasonable likelihood of obtaining?

2. Are the Commission's reasons for denying odd-lot status to the claimant inconsistent with the facts of the case and/or irrelevant to *prima facie* case requirements?

3. Is the claimant entitled to total permanent disability benefits, because the employer and ISIF did not present evidence of an actual job available to the claimant which she had the ability to perform and a reasonable likelihood of obtaining?

4. Was it error for the Commission, under I.C. § 72–406, to apportion disability attributable to non-medical factors to the preexisting impairment?

5. Did the Commission err in not giving sufficient weight under I.C. § 72–430 to the cumulative effect of injuries and the magnified effect of non-medical factors caused by the last injury?

6. Where the claimant in this case had previously been able to do labor employment, including agricultural and food processing work, notwithstanding her significant preexisting impairment, but after the injury in question, was unable to perform that type of work or continue in her previous employment, did the Commission err in apportioning non-medical factors in proportion to the impairments?

## I.

Does the evidence, as a matter of law, establish a *prima facie* case of odd-lot disability so as to shift the burden to the employer and Industrial Special Indemnity Fund ("ISIF") of producing an actual job which the claimant has the ability to perform and a reasonable likelihood of obtaining?

■ This issue has been addressed by this Court in *Huerta v. School Dist. #431*, 116 Idaho 43, 773 P.2d 1130 (1989).

This is not one of those cases where the claimant has made out a *prima facie* case as a matter of law, because "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 407 n. 2, 565 P.2d 1360, 1364 n. 2 (1977). Here, the evidence of Huerta's employability was in dispute. Therefore, Huerta's burden of proof in attempting to establish a *prima facie* case of odd-lot status was to prove the unavailability of suitable work. *Gordon v. West*, 103 Idaho 100, 104–05, 645 P.2d 334, 338–39 (1982). Odd-lot status is a factual determination within the discretion of the Commission. We will sustain the Commission's finding on this is-

sue, if it is supported by substantial competent evidence. *Kindred v. Amalgamated Sugar Co.*, 114 Idaho 284, 291, 756 P.2d 401, 408 (1988).

*Huerta*, 116 Idaho at 47, 773 P.2d at 1134.

As in *Huerta*, this is not a case of undisputed facts, where it is possible to find a *prima facie* case of odd-lot status as a matter of law. In this case, there is a dispute of facts as to the nature and degree of disability of Weygint, the type of work she is capable of performing, and the efforts she has made to seek work. All of these issues were the subject of substantial evidence taken by the Commission as proof of the required elements of odd-lot status.

The Commission set forth its findings based upon the evidence in Finding XII, of its Findings of Facts and Conclusions of Law.

Claimant contends that she is totally and permanently disabled and is in the odd-lot category. In determining whether the Claimant has established a *prima-facie* case of odd-lot disability it is necessary to examine whether the Claimant has sought or attempted other types of employment unsuccessfully. This may be satisfied by showing evidence of the Claimant's own attempts to seek employment, evidence that the Claimant has attempted employment unsuccessfully, or evidence that the Claimant utilized vocational counselors or others to conduct an unsuccessful job search. *Huerta v. School Dist. #431*, 116 Idaho 43 [773 P.2d 1130]. The evidence shows that the Claimant engaged in two unsuccessful attempts at employment, that Vocational Counselors have made a few inquiries on her behalf from prospective employers, and that the Claimant has made no attempt on her own to find employment. The Referee finds that the very minimal efforts made by the Claimant and those made on her behalf, are insufficient to establish a *prima-facie* case of odd-lot disability. The Claimant was not found to be a credible witness with respect to the extent of her preexisting condition, and her lack of credibility affects the remainder of her testimony. The Claimant insists that she must use crutches at all times, yet her treating physician did

not believe the use of crutches was necessary, and has attempted to persuade the Claimant on several occasions to avoid the use of crutches. The Claimant's efforts to follow-up on job opportunities called to her attention by vocational consultants has been extremely minimal and her reasons for her failure to do so are generally unpersuasive and flimsy. Claimant evidences a preconceived notion that she could not do the work, though she lacks knowledge about the prospective jobs and makes assumptions which cannot be supported unless she has personally contacted the employer to ascertain the facts surrounding the employment. Claimant was totally unwilling to consider employment in Boise, yet, prior to the injury, she traveled from her home, which is located just to the West of Caldwell, an equivalent distance westward to work in the Fruitland area. The Claimant has made two attempts to perform actual employment since her injury. Claimant's first attempt at the Symms' Fruit Ranch lasted only four hours, due to discomfort she experienced while sitting on an apple box. The Claimant made no attempt to determine whether some alternate sitting arrangement could be made, and did not discuss her problem with the employer. Claimant's second attempt at Checkmate Industries established that the Claimant was physically able to work in a sitting position, as she expressed no discomfort as the result of her one week employment. Claimant was laid off due to an error rate which exceeded the employer's standards. However, Claimant was encouraged by the employer to apply again for other jobs which the employer had available from time-to-time. The Claimant has made no effort to do so. The Referee cannot conclude that further attempts on the part of the Claimant to seek or perform employment would prove futile. The Referee concludes that the Claimant has failed to sustain her burden of proving that she is totally and permanently disabled.

There is substantial competent evidence to support the finding of the Commission and we will not overturn a finding so supported. *Olvera v. Del's Auto Body,* 118 Idaho 163, 795 P.2d 862 (1990); *Huerta v. School Dist. #431,* 116 Idaho 43, 773 P.2d 1130 (1989); *Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 772 P.2d 119 (1989).

## II.

Are the Commission's reasons for denying odd-lot status to the claimant inconsistent with the facts of the case and/or irrelevant to *prima facie* case requirements?

Is the claimant entitled to total permanent disability benefits, because the employer and ISIF did not present evidence of an actual job available to the claimant which she had the ability to perform and a reasonable likelihood of obtaining?

The foregoing issues on appeal of the appellant are dealt with in our resolution of the first issue. We note that the Commission correctly perceived the applicable law and the elements of proof required for odd-lot status in Finding of Fact XII, and had substantial competent evidence to support the findings it applied to those elements.

These issues on appeal are an alternate statement of the first issue on appeal and need not be further analyzed.

## III.

Was it error for the Commission, under I.C. § 72–406, to apportion disability attributable to non-medical factors to the preexisting impairment?

Did the Commission err in not giving sufficient weight under I.C. § 72–430 to the cumulative effect of injuries and the magnified effect of non-medical factors caused by the last injury?

Where the claimant in this case had previously been able to do labor employment, including agricultural and food processing work, notwithstanding her significant preexisting impairment, but after the injury in question, was unable to perform that type of work or continue in her previous employment, did the Commission err in apportioning non-medical factors in proportion to the impairments?

The three foregoing issues on appeal substantially involve the same legal issues

**204**

which consist of the apportionment of the non-medical factors of Weygint's disability by the Commission.

 In making its apportionment determination, the Commission must provide a sufficient rationale for its decision so that the same is capable of being reviewed on appeal as to the support of that rationale by substantial competent evidence, and a determination as to whether that rationale is in accord with existing legal principles.

The Commission dealt with the apportionment of non-medical factors in Finding of Fact XIII.

The Referee finds that the non-medical factors, which affect Claimant's employability, coupled with her permanent physical impairment render her disabled to the extent of 60% of a whole person. This disability must be apportioned because a substantial part of the Claimant's disability is due to pre-existing permanent physical impairment. Under § 72–406 the employer is liable only for the additional disability from the industrial injury cases where disability is increased because of a pre-existing physical impairment. The Referee concludes that it is appropriate to apportion the disability caused by non-medical factors in approximately the same proportion as is the disability due to permanent physical impairment. The Referee finds that the Claimant's permanent partial disability attributable to the accident of May 15, 1986, is 10% of the whole person.

The Commission correctly set forth the burden imposed under I.C. § 72–406, but then apparently applies what is known as the *Carey* formula, *Carey v. Clearwater County Rd. Dep't,* 107 Idaho 109, 118, 686 P.2d 54, 63 (1984), to apportion the disability caused by non-medical factors.

The Commission gives no rationale nor basis for this apportionment.

The *Carey* formula was adopted by this Court to be applied in ISIF cases and is not a formula to be mechanically applied to all non-medical apportionment issues.

We are not able to determine the basis for the apportionment by the Commission based upon its findings and vacate that portion of the award dealing with the apportionment of disability caused by non-medical factors.

Costs on appeal to appellant.

JOHNSON and TROUT, JJ., concur.

FULLER, Justice Pro Tem., dissents from parts I and II and concurs in part III of the majority opinion:

In my view, claimant established by at least one of the methods recognized in *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 795 P.2d 312 (1990), a *prima facie* case of odd-lot status as a matter of law from the record before this Court. Claimant produced undisputed evidence: (1) that showed what other types of employment she had attempted, or; (2) that showed others, on behalf of claimant, had searched for other work for her, and such work was not available.

In my view, the Commission misapplied the odd-lot doctrine. The Commission failed to consider properly these undisputed facts: claimant made efforts for sewing positions, which she could not perform well enough to be hired (Tr., pp. 38–39); the Symms Fruit Ranch job was too painful and was only seasonal (Tr., pp. 44–50); claimant was not able to do Checkmate Industries' job due to nonphysical reasons (Tr. p. 247). The Commission should have concluded that while claimant may be physically able to perform some work, she was not able to be employed regularly in a well-known branch of employment. *See Lyons v. Industrial Special Indemnity Fund,* 98 Idaho 403, 565 P.2d 1360 (1977).

BISTLINE, Justice, concurring fully in the opinion of FULLER, J. Pro Tem:

After reading and studying many decisions of the Industrial Commission, and after forty years of varied experience in the realism of workers' compensation law, and particularly upon becoming conversant with the decision of the Industrial Commission in Mrs. Weygint's struggle for benefits, one is brought to wonder if the time is now or nigh that the people of this state

pause to reflect and decide whether the common law system, which was rejected by the legislature as being inconsistent with modern industrial conditions, might better serve Idaho workers who suffer injuries.