859 P.2d 330

**Brent D. HIPWELL, Claimant–
Appellant,**

v.

**CHALLENGER PALLET AND SUPPLY,
Employer, and Liberty Northwest In-
surance Corporation, Surety, Defen-
dants–Respondents.**

No. 19700.

Supreme Court of Idaho,
Idaho Falls, April 1993 Term.

Aug. 27, 1993.

Rigby, Thatcher, Andrus, Rigby & Kam, Chtd., Rexburg, for claimant-appellant. Gaylon R. Andrus argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for defendants-respondents. Robert L. Berlin argued.

McDEVITT, Chief Justice.

### BACKGROUND AND PRIOR PROCEEDINGS

On April 25, 1990, appellant, Brent D. Hipwell ("Hipwell"), filed an application for hearing with the Industrial Commission of the State of Idaho ("Commission"). In his application, Hipwell identified his employer as respondent Challenger Pallet and Supply ("Challenger"), and Challenger's insurance carrier as respondent Liberty Mutual Insurance Corporation ("Liberty"). Hipwell alleged that he injured his back on November 7, 1988, when he "was lifting a cutting torch upstairs...." Further, he alleged that he "[i]njured [his] lower back with herniated disc[s] at L, 4–5, L, 3–4 and L, 5S–1, and [suffered] muscle ligamentous back pain." In addition, Hipwell asserted that he was still disabled and in need of treatment, and that Dr. Douglas R. Smith placed his impairment at 37% and felt that Hipwell still needed medical treatment. Hipwell also stated that Liberty had paid some of his medical bills, but that it refused to pay for continuing treatment. Hipwell framed the issues as:

1. Whether the employer should pay unpaid medical bills.
2. Whether the employer should authorize and pay for further medical treatment.
3. Whether the claimant should still be entitled to temporary total disability.
4. Whether claimant should be entitled to retraining benefits.
5. If the claimant is medically stable, what the disability rating should be.

On May 14, 1990, respondents filed an answer to Hipwell's application for hearing. In their answer, respondents denied that Hipwell's injury arose out of and in the course of his employment, that he was temporarily disabled for the period of time he claims, and that he was permanently disabled to the extent he claims. Respondents also disputed whether Hipwell's injury was due, in whole or in part, to a pre-existing injury, illness, or condition, whether he is entitled to additional temporary disability and medical treatment, and the cause and extent of his permanent disability. The hearing was held before a referee in Idaho Falls, Idaho, on November 13, 1990.

On December 11, 1990, Hipwell filed a motion for an order permitting the extension of time to take a deposition, or, in the alternative, reopen the hearing. Hipwell's reason for the motion was "that the deponent, Lori Gentillon ("Gentillon"), was unable to test the claimant until subsequent to the hearing...." The record reveals that Gentillon had prepared a report on November 30, 1990, and that the report was not made available to Hipwell until December 3, 1990. Hipwell asserted that the report would be "helpful and relevant to the issues before the Commission...." An affidavit in support of the motion was filed by G. Rich Davis, attorney for Hipwell, in which he stated that Gentillon is a vocational counselor and that she was unable to test Hipwell until after the hearing. Hipwell's attorney also stated that he had contacted respondents' attorney, Robert L. Berlin, regarding the request for more time. Gentillon's report was attached to the affidavit.

On December 14, 1990, the referee issued an order denying Hipwell's motion for extension of time to take the deposition. The referee cited Rule VIII of the Commission's Rules of Judicial Practice and Procedure. Because "[t]he testing and subsequent report of Ms. Gentillon clearly constitutes evidence created after the hearing in this case," and because Hipwell had never indicated that new evidence would be created after the hearing, the referee denied the motion.

On February 11, 1991, Hipwell filed a motion for consolidation. Hipwell asked the Commission to consolidate this case

with a pending case he had filed against Diet Center, Incorporated ("Diet Center"), employer, and Industrial Indemnity Company ("Industrial Indemnity"), surety. Hipwell contended that consolidation was proper because Challenger and Liberty took the position that part of Hipwell's injuries are attributable to his employment with Diet Center. Hipwell also filed a memorandum in support of the motion for consolidation. In the memorandum, Hipwell stated:

> In the course of the proceeding against Challenger Pallet and Supply, Dr. Robert Burton, at the time of the taking his deposition on January 8, 1991, testified that it was his opinion that part of the claimant's disability and problems was caused by the injuries sustained by the claimant while working for Diet Center on September 13, 1988.

Hipwell attached relevant portions of Dr. Burton's deposition.

On February 13, 1991, Hipwell and respondents filed a stipulation for consolidation. However, on February 14, 1991, the referee denied the motion for consolidation. On February 20, 1991, Hipwell filed a request for reconsideration of the order on consolidation, stating that it appeared that the referee did not have the stipulation when he signed the order. Once again, by order dated March 12, 1991, the referee denied the motion, stating that "consolidation of these two cases is [not] necessary or appropriate."

On November 13, 1991, the referee issued his findings of fact, conclusions of law, and proposed order. The referee framed the issues as:

(1) The extent of Claimant's permanent physical impairment incurred as a result of his accident and injury while working for Defendant Challenger Pallet and Supply;

(2) Whether Claimant is entitled to any further temporary disability income benefits and/or medical benefits after August 8, 1989;

(3) Whether Claimant has any permanent partial disability in excess of his permanent physical impairment and, if so, whether it should be apportioned;

(4) Whether Claimant is entitled to retraining benefits; and

(5) Whether Claimant is entitled to an award of attorney fees.

As to the first two issues, the referee found that "[t]here is conflicting evidence regarding the extent of Claimant's permanent physical impairment as a result of his accident in November, 1988." The referee examined the evidence, and concluded that he would give "more weight to the medical panel's evaluation and opinion of Claimant, labeled as Exhibits 4 and 18."[1] As a result, the referee found:

> [T]he Claimant has a permanent physical impairment rating of 3% (30% of 10% of the whole person), that is the result of his work related accident on November 4, 1988, and for which he is entitled to the appropriate benefits from the Defendants. The referee also finds that the claimant was medically stationary as of August 8, 1989 ..., [and, thus,] is not entitled to any temporary disability income benefits or medical benefits after August 8, 1989.

As to the third issue, the referee cited *Seese v. Ideal of Idaho, Inc.*, 110 Idaho 32, 714 P.2d 1 (1985), regarding the test for determining disability in excess of impairment rating, and I.C. §§ 72–425 and 72–430. The referee also considered medical and non-medical factors and found:

> [T]he Claimant has a permanent partial disability of 15% of the whole person, which is in addition to his total permanent impairment rating of 10% of the whole person.

However, since the referee found that only 3% of the 10% permanent physical impairment rating was attributable to the November 1988 injury, the referee apportioned the permanent partial disability, resulting in 8% being attributed to Hipwell's November 1988 injury.

As to the fourth issue, the referee concluded that retraining benefits are "neither

---

1. In August of 1989, Liberty arranged for Hipwell to be examined by a panel of physicians.

feasible nor warranted in this case," where Hipwell would need another two and one-half years to obtain a four-year engineering degree and where I.C. § 72–450 allows retraining benefits up to a maximum of two fifty-two-week periods.

Finally, as to the fifth issue, the referee denied attorney fees "[d]ue to the nature and complexity of the issues involved ..." in the case.

The Commission conducted a *de novo* review of the record, and it adopted the referee's findings of fact and conclusions of law. Two members of the three-member Commission signed the order.

On December 16, 1991, Hipwell filed a notice of appeal, appealing from the findings of fact, conclusions of law, and order. On appeal, Hipwell raises the following issues:

I.    Is the Commission's finding that Hipwell is not entitled to any further medical benefits after August 8, 1989, supported by substantial and competent evidence, and is its order to the same effect supported by the findings of fact?

II.   Is there substantial and competent evidence to support the Commission's finding that Hipwell is not entitled to additional temporary disability benefits?

III.  Is there substantial and competent evidence to support the Commission's finding that Hipwell is entitled to a 10% permanent impairment rating?

IV.   Is there substantial and competent evidence to support the Commission's finding regarding Hipwell's permanent partial disability?

V.    Is there substantial and competent evidence to support the Commission's apportionment of 70% of the permanent disability to Diet Center and 30% to Challenger?

VI.   Did the Commission err in refusing to allow joinder of the claim against Diet Center?

VII.  Did the Commission abuse its discretion by refusing to allow retraining benefits?

VIII. Is Hipwell entitled to attorney fees pursuant to I.C. § 72–804, both at the trial level and the appellate level?

## ANALYSIS

### A.  *Issues I–V.*

■  The first five issues deal with factual findings made by the Commission. Therefore, our scope of review is limited to determining whether the factual findings are supported by substantial and competent evidence. *Quintero v. Pillsbury Co.,* 119 Idaho 918, 920, 811 P.2d 843, 845 (1991). *See* Idaho Const. art. V, § 9; I.C. § 72–732.

■  The first finding challenged, relating to whether Hipwell is entitled to further medical benefits after August 8, 1989, is supported by substantial and competent evidence. On August 8, 1989, a panel of physicians concluded that Hipwell was not in need of further treatment. While there may be other testimony in the record capable of different interpretations, this Court will not weigh the testimony when our review is limited to the substantial and competent evidence standard. *See Monroe v. Chuck & Del's Inc.,* 123 Idaho 627, 630, 851 P.2d 341, 344 (1993).

■  Hipwell also challenges the Commission's finding that he is not entitled to further medical benefits as a misapplication of the law, citing *Sprague v. Caldwell Transp., Inc.,* 116 Idaho 720, 779 P.2d 395 (1989). In *Sprague,* the claimant injured his back, and the surety paid for all of his treatment through April 10, 1985. In April of 1985, a doctor that the surety had hired and the claimant's doctor concluded that the claimant was not in need of further treatment. Subsequent to April 10, 1985, the claimant returned to his doctor for further treatment of back pain. He received another forty-seven treatments. While the Commission found that the claimant had made gradual improvements during these subsequent treatments and that the charges were fair and reasonable, it concluded that "the treatment was not reasonable under I.C. § 72–432(1), and therefore the surety was not obligated to make pay-

ments therefor."[2] *Sprague,* 116 Idaho at 721, 779 P.2d at 396.

On appeal, the sole issue in *Sprague* was "whether the treatment [the claimant] received from his physician subsequent to April 10, 1985, was 'reasonable' under I.C. § 72–432(1)." *Sprague,* 116 Idaho at 721, 779 P.2d at 396. This Court held that I.C. § 72–432(1) "requires the employer to pay for the costs of reasonable medical treatment required by the employee's physician," *Sprague,* 116 Idaho at 721, 779 P.2d at 396, *where three circumstances are present:*

a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice the charges for which were fair, reasonable and similar to charges in the same profession.

*Sprague,* 116 Idaho at 722–23, 779 P.2d at 397–98. In the present case, Hipwell is not entitled to further medical benefits because there is no evidence that Hipwell's condition improved from the treatment rendered by his doctor, Dr. Smith. *Sprague* requires the claimant make "gradual improvement from the treatment received." *Sprague,* 116 Idaho at 722, 779 P.2d at 397.

■ The second finding challenged, relating to whether claimant is in need of additional temporary disability benefits, is also supported by substantial and competent evidence. For this finding, the Commission relied upon the panel report and the deposition testimony of Dr. Burton, one of the panel physicians. The panel and Dr. Burton concluded that the claimant was not in a period of recovery on August 8, 1989, and that no further medical treatment was necessary. Idaho Code § 72–408 requires payment of income benefits only "during the period of recovery." We affirm this finding.

■ The third finding challenged, relating to whether Hipwell is entitled to a 10% permanent impairment rating, is also supported by substantial and competent evidence. The Commission relied upon the panel's report. Hipwell argues that the Commission should have relied upon Hipwell's treating physician. However, "the Industrial Commission, rather than the claimant's treating physician, is the factfinder and the ultimate evaluator of impairment." *Urry v. Walker & Fox Masonry Contractors,* 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). We affirm this finding.

The fourth finding challenged, relating to the Commission's determination of Hipwell's permanent disability in excess of impairment, is also supported by substantial and competent evidence. Hipwell argues specifically that the Commission failed to address all factors in determining permanent disability in excess of impairment, citing *Mapusaga v. Red Lion Riverside Inn,* 113 Idaho 842, 748 P.2d 1372 (1987), *overruled in part by Archer v. Bonners Ferry Datsun,* 117 Idaho 166, 169, 786 P.2d 557, 560 (1990); *Bennett v. Clark Hereford Ranch,* 106 Idaho 438, 680 P.2d 539 (1984); I.C. § 72–430.

The record reveals that the Commission did consider all factors, but that it concluded that no evidence had been presented by Hipwell that established that he had any physical impairment attributable to the factors enumerated in *Mapusaga.* In addition, the Commission found that Hipwell's condition was not progressive, and, thus, it did not need to consider the cost of future surgery. Our review of the record satisfies us that the Commission's finding is supported by substantial and competent evidence. We affirm this finding.

■ The fifth finding challenged relates to the apportionment of disability between Diet Center (70%) and Challenger (30%). For this finding, the Commission relied

---

2. Idaho Code § 72–432(1) provides:
The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required by the employee's physician or needed immediately after an injury or disability from an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

upon the testimony of Dr. Burton, who testified that 70% to 75% of Hipwell's permanent physical impairment was caused by the prior industrial accident. It is fundamental that:

> In making its apportionment determination, the Commission must provide a sufficient rationale for its decision so that the same is capable of being reviewed on appeal as to the support of that rationale by substantial competent evidence, and a determination as to whether that rationale is in accord with existing legal principles.

*Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 204, 846 P.2d 202, 206 (1993). The inquiry, then, is whether the Commission provided a "sufficient rationale" for its apportionment of disability between Diet Center (70%) and Challenger (30%).

In reaching its determination, the Commission adopted the following finding of fact from the referee:

> Dr. Burton testified during his deposition that, in his opinion, 70 to 75% of Claimant's permanent physical impairment rating was related to the pre-existing condition as a result of the alleged prior work accident, and the remaining 25 to 30% was attributable to an aggravation of the pre-existing condition due to Claimant's accident on November 4, 1988.

> The Referee notes that Claimant again saw Dr. Marano in January, 1990. Dr. Marano, in his records contained in Exhibit 4, stated that he felt that a rating of 10% was "probably generous," and that 5% of the whole person would be more appropriate. At that time, Dr. Marano did not find any significant change from the CT scan ordered by Dr. Smith in February, 1989, and the MRI ordered by the panel in August, 1989.

> Based upon this evidence, the Referee finds that the Claimant has a permanent physical impairment rating of 3% (30% of 10% of the whole person), that is the result of his work related accident on November 4, 1988, and for which he is entitled to the appropriate benefits from the Defendants.

In addition, prior to this finding, the referee discussed the conflicting evidence in the record, and decided to "give[ ] more weight to the medical panel's evaluation and opinion of Claimant...." Dr. Burton was the chairperson of the medical panel.

Based upon the foregoing, we hold that the Commission did provide a "sufficient rationale," weight of the evidence, for its apportionment of disability between Diet Center and Challenger. We hold that this finding is supported by substantial and competent evidence.

**B.  *Issue VI.***

■  Hipwell argues that the Commission erred when it refused to grant his motion for consolidation of his claims against Challenger and Diet Center. Hipwell adds that the parties stipulated to consolidation.

■  The Commission's power to consolidate is analogous to I.R.C.P. 42(a), wherein a court "may" order a joint hearing. Thus, the Commission has discretion to order consolidation. *Branom v. Smith Frozen Foods of Idaho, Inc.,* 83 Idaho 502, 365 P.2d 958 (1961). The record reveals that the Commission, through the referee, denied the motion for consolidation because consolidation was not necessary or appropriate. Hipwell focuses his argument on the stipulation. Nonetheless, it is within the *Commission's* discretion to order consolidation, and our review of the record reveals no abuse thereof.

**C.  *Issue VII.***

Hipwell argues that the Commission abused its discretion by refusing to allow retraining benefits. Apparently, Hipwell wants to finish his four-year degree in engineering.

■  Idaho Code § 72–450 gives the Commission discretion to award retraining benefits for up to two fifty-two week periods. *Archer,* 117 Idaho at 173, 786 P.2d at 564. Our review of the record satisfies us that the Commission did not abuse its discretion in denying Hipwell retraining benefits.

**D. *Issue VIII.***

Hipwell claims that he was entitled to attorney fees below and is entitled to attorney fees on appeal pursuant to I.C. § 72-804. This statute mandates that the employer pay attorney fees if the Commission or court determine that:

[T]he employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation provided by law justly due and owing to the employee or his dependents....

I.C. § 72-804.

Because we affirm the Commission, and because Hipwell is the losing party below and on appeal, we decline to award attorney fees on appeal, and we decline to reverse the Commission's denial of attorney fees to Hipwell. *Quintero,* 119 Idaho at 921, 811 P.2d at 846.

The decision of the Commission is affirmed.

Costs to respondents.

TROUT and SILAK, JJ., concur.

BISTLINE, Justice, specially concurring and dissenting.

I concur in Justice Johnson's dissent as to issue V of the majority opinion.

It is necessary, in this justice's opinion, to dissent further from the majority's discussion, specifically, that regarding issue II, the propriety of the Commission's denial of medical benefits after August 8, 1989. The majority opinion misses the point of *Sprague v. Caldwell Transp., Inc.,* 116 Idaho 720, 779 P.2d 395 (1989), by premising the opinion's analysis solely on whether Hipwell's medical condition had improved.

The central holding in *Sprague* is that it is not the Commission's function to "decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision [to treat] is whether the treatment was reasonable." 116 Idaho at 722, 779 P.2d at 397. The relevant inquiry is whether that treatment was *reasonable.* The majority, then, is incorrect in stating that an employer must pay for the costs of reasonable medical treatment required by the employee's physician only when the three circumstances found in *Sprague* are present. To the contrary, an employer must pay for the costs of reasonable medical treatment required by the physician, period. The three circumstances of *Sprague* merely constituted evidence in that case that such treatment was reasonable, not an iron-clad test.

It is thus readily apparent that *Sprague* does not require that the claimant make gradual improvement from the treatment received. Whether the claimant's condition gradually improved should not be determinative of whether treatment *is* reasonable. Certainly it is conceivable that a course of treatment seemed necessary at the time the doctor prescribed it, even though the patient unfortunately did not improve. The reasonableness of a doctor's determination that treatment is indicated should be measured at the time the doctor prescribes treatment, not by "armchair doctoring" afterwards with the benefit of hindsight. In the instant case, the evidence is uncontroverted that Hipwell complained of more pain after the panel's finding of stability on August 8, 1993. Although all of the care Hipwell received from Dr. Smith may not have been reasonable when viewed in light of the panel's findings, some of it may have been. Because neither the referee nor the Commission has cited to or discussed *Sprague,* consequently neither applies the reasonableness test, and we cannot ascertain how much of the treatment was reasonable.[3] Accordingly, the Commission has abused its discretion by failing to discuss or utilize the applicable legal stan-

---

**3.** This is not the first time the Commission has failed to recognize Idaho case law which is both on point and relevant. *See, e.g., Hill v. E & L Farms,* 123 Idaho 371, 848 P.2d 429 (1993).

dards in determining eligibility for benefits after August 8, 1989. *See Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

In sum, it appears necessary to remind this Court and the Commission of our joint obligation: "The provisions of the Worker's Compensation Law are to be *liberally construed* in favor of the employee. Liberal construction in favor of the worker is required to enable the act to serve the humane purposes for which it was promulgated, 'leaving no room for narrow, technical construction.'" *Sprague,* 116 Idaho at 721, 779 P.2d at 396 (emphasis in original; citations omitted) (quoting *Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977)).

I do specially concur in the majority's discussion of issues VI and VII which expands upon the majority's factual recitation. The referee's conclusion that consolidation was neither necessary nor supported is sustained by his finding that the two matters were in different stages of procedure, a fact not mentioned by the majority. Similarly, the denial of retraining benefits was within the referee's and Commission's discretion, but only in light of its apportionment of but 30% of the disability to Challenger and in light of the fact that Hipwell actually had *three and one-half to four years left* in which to obtain his degree (rather than the two and one-half years the majority asserts). Had the apportionment been greater or had Hipwell required less time for his education (even if he required more than two years), the Commission would have abused its discretion by adopting the referee's denial of retraining benefits.

JOHNSON, Justice, concurring, dissenting, and concurring in the result.

I concur in all of the Court's opinion, except parts V and VI.

I dissent from part V, because I conclude that the apportionment has the same defect as the apportionment in *Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 846 P.2d 202 (1993). As in *Weygint,* in apportioning the disability caused by non-medical factors, the Commission apparently applied the formula from *Carey v. Clearwater County Rd. Dep't,* 107 Idaho 109, 118, 686 P.2d 54, 63 (1984).

I concur in the result of part VI. In my view, we should not predicate the Commission's power to consolidate by reference to I.R.C.P. 42(a). Workers' compensation cases are not civil proceedings. *Swanson v. Kraft, Inc.,* 116 Idaho 315, 322, 775 P.2d 629, 636 (1989).