IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 43677

CHANNEL (BLACKER) RISH,         )
                                       )

     Claimant-Appellant,         )

                                       )

v.                                       )

                                       )

THE HOME DEPOT, INC., Employer, and   )
INSURANCE COMPANY OF THE STATE   )
OF PENNSYLVANIA, Surety,         )

                                       )

     Defendants-Respondents.        )

Twin Falls/Valley High School
November 2016 Term

2017 Opinion No. 22

Filed: February 28, 2017

Stephen W. Kenyon, Clerk

Appeal from the Industrial Commission.

Industrial Commission order denying benefits, vacated and <u>remanded</u> for further proceedings.

Curtis & Porter, PA, Idaho Falls, for appellant. Andrew A. Adams argued.

Bowen & Bailey, LLP, Boise, for respondents. W. Scott Wigle argued.

---

BURDICK, Chief Justice

This appeal arises from an Industrial Commission (the Commission) order denying medical care benefits to Channel Rish. The Commission held that Idaho's Worker's Compensation Act did not require Respondents to pay for the medical care Rish received after she achieved maximum medical improvement because that medical care was deemed unreasonable. On appeal, Rish contends the Commission's order is not supported by substantial and competent evidence, and moreover, the Commission misapplied the governing legal standard when determining whether the medical care was reasonable. We vacate and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Rish worked as a cashier at Home Depot. While working on October 30, 2005, Rish slipped on a floor mat and injured her right knee. The injury ultimately required Rish to undergo three knee surgeries, which Dr. Casey Huntsman performed in 2005, 2006, and 2007.

On August 9, 2007,[1] roughly three months after Rish's third surgery, Dr. Huntsman concluded Rish had achieved maximum medical improvement (MMI). Dr. Huntsman, however, further noted that Rish "definitely needs . . . continued pain management" with Dr. Holly Zoe.

To that end, Rish visited Dr. Zoe for pain management treatment. But because that treatment did not improve Rish's knee pain, Respondents grew skeptical as to Rish's continued medical care and surmised that Rish was merely seeing Dr. Zoe to get pain medication. Therefore, in January 2008, Respondents arranged for Rish to receive an independent medical examination (IME) with Drs. Robert Friedman and Christian Gussner. Those doctors concluded Rish had not yet achieved MMI and recommended Rish attend a chronic pain management program while being weaned off pain medication. Rish never attended that chronic pain management program and instead continued seeing Dr. Zoe for treatment throughout 2008.

As such, Respondents remained skeptical as to Rish's continued medical care with Dr. Zoe. Thus, in January 2009, Respondents arranged for Rish to receive another IME, this time with Drs. Christian Gussner and Michael McClay, a psychologist. Dr. Gussner "was unable to detect any ongoing problem with [Rish's] right knee" and recommended she stop taking pain medication. Dr. McClay concluded Rish had a "long history of personal problems and medical problems" and advised that Rish "need[ed] to be out of the workers' compensation process as quickly as possible."

Respondents gave the January 2009 IME results to Dr. Zoe, which caused Dr. Zoe to begin tapering Rish's pain medication. In addition, Respondents stopped paying for Rish's medical care after the May 1, 2009 visit with Dr. Zoe. In February 2010, Rish filed a worker's compensation complaint to seek past and future disability benefits and medical care. Respondents answered and conceded Rish was entitled to the already-paid disability benefits and medical care, but Respondents disputed whether she was entitled to additional disability benefits and medical care. After a hearing, the Commission held in Respondents' favor. The Commission noted that Rish did not timely raise the issue of disability benefits, but concluded Rish was nevertheless entitled to no additional disability benefits. Further, the Commission concluded Rish was entitled to no additional medical care benefits because the medical care Rish received after August 9, 2007—the date when Dr. Huntsman deemed her at MMI—was unreasonable.

---

[1] Both the record and briefing feature conflicting dates. Some documents in the record and parts of the briefing identify the date as August 7, 2007. Other documents in the record and parts of the briefing identify the date as August 9, 2007. Because Dr. Huntsman deemed Rish at MMI on August 9, 2007, we assume that is the proper date.

Rish timely appeals the Commission's denial of continued medical care benefits.

## II.    ISSUES ON APPEAL

1.    Did the Commission err by holding that the medical care Rish received after August 9, 2007 was unreasonable?

2.    Should attorney fees be awarded on appeal?

## III.    STANDARD OF REVIEW

"This Court exercises free review over the Commission's legal conclusions but does not disturb factual findings that are supported by substantial and competent evidence." *Neel v. W. Const., Inc.*, 147 Idaho 146, 147, 206 P.3d 852, 853 (2009). "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Luttrell v. Clearwater Cty. Sheriff's Office*, 140 Idaho 581, 583, 97 P.3d 448, 450 (2004) (citation omitted). "Substantial and competent evidence is more than a scintilla of evidence, but less than a preponderance." *Hope v. Indus. Special Indem. Fund*, 157 Idaho 567, 570, 338 P.3d 546, 549 (2014).

## IV.    DISCUSSION

The main issue we address is whether the Commission erred by holding that the medical care Rish received after August 9, 2007 was unreasonable. Additionally, Rish requests attorney fees on appeal.

**A.    The Commission erred by holding that the medical care Rish received after August 9, 2007 was unreasonable.**

Under Idaho's Worker's Compensation Act, an employee who suffers a compensable injury at work is entitled to "reasonable" medical care. I.C. § 72-432(1). As Idaho Code section 72-432(1) provides:

> [T]he employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter.

The Referee deemed as reasonable the medical care Rish received from October 30, 2005 until August 9, 2007. However, the Referee deemed as unreasonable the medical care Rish received after August 9, 2007 because that medical care "was merely palliative and failed to restore function to any useful degree." The Referee concluded Respondents were not required to

3

pay for the medical care Rish received after August 9, 2007. The Commission entered an order adopting the Referee's findings of fact and conclusions of law.

Rish challenges the Commission's order on two bases. She first contends substantial and competent evidence does not support the Commission's order because it is primarily based on Rish achieving MMI on August 9, 2007. Rish highlights how the Referee's findings repeatedly emphasize her date of MMI. Indeed, the Referee explained that Dr. Huntsman's "opinion that [Rish] was at MMI as of August 9, 2007 carries the most weight." We hold that the Referee's findings illustrate error. As we have explained previously, substantial and competent evidence "is *relevant* evidence which a reasonable mind might accept to support a conclusion." *Luttrell*, 140 Idaho at 583, 97 P.3d at 450 (emphasis added). MMI, however, is not relevant to the reasonableness of continuing medical care. To be sure, MMI is relevant insofar as it defines the "period of recovery" for disability benefits. *See, e.g.*, *Hernandez v. Phillips*, 141 Idaho 779, 781, 118 P.3d 111, 113 (2005). But nothing in the plain language of Idaho Code section 72-432(1) suggests MMI is relevant as to whether continued medical care is reasonable. Nor have we ever held that MMI is relevant as to whether continued medical care is reasonable.

Rish's second argument is that the Commission's order contravenes this Court's holding in *Chavez v. Stokes*, 158 Idaho 793, 353 P.3d 414 (2015), because the Referee primarily determined reasonableness by retrospectively analyzing the efficacy of the medical care. At issue in *Chavez* was whether a helicopter trip to the hospital constituted "reasonable" medical care under Idaho Code section 72-432(1). *Id.* at 796–99, 353 P.3d at 417–20. The employee in *Chavez* injured his hand while working and was helicoptered to the hospital for treatment. *Id.* While the Referee concluded the helicopter trip was unreasonable because, in hindsight, the employee could have taken an ambulance to the hospital, the Commission rejected those findings and instead held that the helicopter trip was indeed reasonable. *Id.* at 795, 353 P.3d at 416.

Our decision in *Chavez* affirmed the Commission. *Id.* at 799, 353 P.3d at 420. *Chavez* cautioned against a myopic, retrospective analysis and held that the Commission's "review of the reasonableness of medical treatment should employ a totality of the circumstances approach." *Id.* at 798, 353 P.3d at 419. *Chavez* attributed the proper inquiry to Justice Bistline, who posited: "The reasonableness of a doctor's determination that treatment is indicated should be measured at the time the doctor prescribes treatment, not by 'armchair doctoring' afterwards with the benefit of hindsight." *Id.* (quoting *Hipwell v. Challenger Pallet & Supply*, 124 Idaho 294, 300,

4

859 P.2d 330, 336 (1993) (Bistline, J., concurring in part and dissenting in part)). As *Chavez* explained, a retrospective analysis "would serve only to second-guess the treatment requirement of the physician without a fair consideration of the information known at the time and place of treatment and any exigent circumstances." *Id.*

Here, the Commission misapplied *Chavez* by retrospectively analyzing the efficacy of Rish's continued medical care to determine reasonableness. The Referee acknowledged *Chavez* when recognizing that "[o]ne factor among many in determining whether post-recovery palliative care is reasonable is based upon whether it is helpful, that is, whether a claimant's function improves with the palliative treatment." But the Referee did not treat the efficacy of Rish's continued medical care as just one factor; instead, it was the thrust of the Referee's analysis. For instance, the Referee noted that Rish's visits with doctors in "June and July 2011 showed no objective improvement in function," despite the continued medical care. The Referee further noted that Rish's "reports of pain increased," despite physical therapy in summer 2012. Similarly, a steroid injection in September 2012 "merely increased [Rish's] pain." And in "early 2014 physical therapy failed to produce positive results." As a result, the Referee concluded the medical care Rish received after August 9, 2007 was unreasonable because it "merely provided, at best, palliative treatment which subjectively, temporarily, decreased [Rish's] complaints of pain but did not provide any curative measures or restore functions in a measurable way."

Accordingly, the Commission committed two main errors: (1) relying on MMI, which is irrelevant to continued medical care; and (2) misapplying *Chavez*. Taken together, these two errors caused the Commission to wrongly hold that palliative care is compensable only if it actually improves the medical condition, thereby discrediting the important role of pain management. For instance, according to the Referee, any medical care Rish received after achieving MMI was "at best, palliative treatment which . . . did not provide any curative measures or restore function in a measurable way." This linkage of palliative care with functional improvement is inconsistent with our precedent. We have instructed that "the word 'treatment' is a broad term and is employed to indicate all steps taken in order to effect a cure of an injury or disease." *Hamilton v. Boise Cascade Corp.*, 84 Idaho 209, 214, 370 P.2d 191, 193 (1962). Thus, palliative, pain-killing "treatments can be compensable even though they will not necessarily cure the employee's condition." *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 924, 712 P.2d 621, 625 (1985) (citing *Hamilton*, 84 Idaho at 215–16, 370 P.2d at 194). We decline to

deviate from this principle, even if the pain management treatment consists of prescribed pain medication that results in addiction or dependency, which, in turn, requires additional treatment. *See Burch v. Potlatch Forests, Inc.*, 82 Idaho 323, 327, 353 P.2d 1076, 1078 (1960) ("We believe it was the intention of the legislature that the injured employee is entitled to such medical, surgical or other treatment as may be reasonably required to relieve him from the effects of his injury and arrest and stay further damage which would naturally flow from the injury."). Requiring an injured worker to endure pain resulting from an industrial accident without assistance of analgesic medications is scarcely consistent with the "humane purposes" for which Idaho's worker's compensation laws were promulgated. *See, e.g.*, *Clark v. Shari's Mgmt. Corp.*, 155 Idaho 576, 579, 314 P.3d 631, 634 (2013). Therefore, we vacate and remand for proper application of the governing law, with the specific instruction that palliative care may be, but is not necessarily, reasonable, even if it is ineffective.

**B.      Rish is not entitled to attorney fees on appeal.**

Rish requests attorney fees under Idaho Code section 72-804, which permits "attorney fees on appeal where the employer or its surety unreasonably brought or contested a claim." *Morris v. Hap Taylor & Sons, Inc.*, 154 Idaho 633, 640, 301 P.3d 639, 646 (2013).

Although Rish is the prevailing party on appeal, Respondents did not unreasonably contest her claim. Conflicting medical evidence in the record illustrates that Respondents had a reasonable factual basis to contest at least some of Rish's medical treatment. We decline to award attorney fees on appeal.

## V.      CONCLUSION

We vacate the Commission's denial of medical care benefits and remand for further proceedings consistent with this opinion. We award no attorney fees or costs on appeal.

Justices EISMANN, HORTON and J. JONES, PRO TEM, **CONCUR.**

Justice W. JONES specially concurring.

I agree with the majority that the Commission applied incorrect legal standards in this case. Whether a claimant has reached MMI is not determinative of whether continued care is reasonable. Palliative treatment may be, but is not necessarily, reasonable, even where it turns out to be ineffective in retrospect. Accordingly, I concur with the majority's conclusion to vacate the Commission's denial of benefits and remand for further proceedings.

I write in order to emphasize that this Court has vacated, and not reversed, the Commission's conclusion that the continued prescription of opioids to Rish was unreasonable. Opioids are highly addictive and can cause significant harm to a patient over time. While palliative care can, and often does, reasonably include the temporary prescription of opioids for pain relief, an indefinite prescription of opioids may cause more harm than good. It is proper for the Commission to consider whether a claimant was suffering from opioid addiction at the time opioids were prescribed in determining whether said prescription was reasonable.

It is not within my purview to make a determination as to whether or not the continued prescription of opioids was reasonable or unreasonable, or whether Rish was suffering from opioid addiction. Such a determination will be left to the Commission on remand. However, there were a number of red flags in this case that must be considered. Specifically, Rish demonstrated a distinct pattern of seeking opioid pain medication from different physicians, and abandoning those physicians as soon as they took measures to wean her off of opioids. This behavior was exemplified by Rish's reaction to Dr. Zoe's attempt to titrate her opioid medication over a several-week reduction period. The Referee found that when Dr. Zoe informed Rish that she would be weaned off of opioids she "started screaming," and thereafter "did not make or attend any follow-up appointments to cooperate with attempts to wean her from her opiate addiction." Drs. Friedman, Gussner, and Cook each also concluded that Rish should be taken off of opioids. But, Rish appears to have been unwilling to take steps towards weaning herself off of opioids, even going so far as to refuse the opportunity to enter into a rehabilitation program at Elks Hospital. This behavior led the Referee to conclude that "[Rish] has refused some conservative treatment measures and has been uncooperative with others. She has changed physicians when a discontinuation of narcotics prescriptions was announced or seemed imminent." This finding is unrelated to MMI and should be considered in determining whether the continuation of opioid treatment was reasonable.

In conclusion, I would emphasize that because the Commission's original order has been vacated, it is now up to the Commission to determine whether or not facts other than MMI and the retrospective efficacy of treatment lead it to the same ultimate assessment of the reasonableness of the treatment provided to Rish.