# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44604

RICHARD JOBE,

     Claimant-Appellant,

v.

DIRNE CLINIC / HERITAGE HEALTH,
Employer, and IDAHO STATE INSURANCE
FUND, Surety,

     Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2017 Term

2017 Opinion No. 129

Filed: December 21, 2017

Karel A. Lehrman, Clerk

---

Appeal from the Industrial Commission of the State of Idaho.

Industrial Commission decision denying that MRSA infection caused by employment, vacated and remanded.

James, Vernon & Weeks, P.A., Coeur d'Alene for appellant. Stephen J. Nemec argued.

H. James Magnuson, Coeur d'Alene, argued for respondents.

---

BURDICK, Chief Justice.

This appeal arises from an Industrial Commission order denying that Dr. Richard Jobe's ("Jobe") Methicillin-resistant Staphylococcus aureus ("MRSA") constituted a compensable occupational disease. The Commission denied Jobe's claim because it found he failed to prove that his MRSA colonization and infection were caused by his employment with Dirne Clinic/Heritage Health ("Heritage"). Jobe appeals, arguing the Commission applied the wrong legal standard in requiring him to prove his MRSA colonization and infection were caused by his employment at Heritage. We vacate and remand.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Jobe is a licensed physician who began practicing in 1965. On October 8, 2012, he began his employment at Heritage as a physician. After working approximately eight months at Heritage, Jobe was diagnosed with a MRSA infection in his right hand on June 17, 2013. At the time of this diagnosis, Jobe told the diagnosing physician the only likely cause of this infection was a cat scratch that had occurred on his right hand a few weeks previously. After this diagnosis, Jobe's MRSA infection became systemic and spread throughout his entire body. To manage this infection, Jobe underwent numerous surgeries. Since June 2013, Jobe has also suffered two strokes related to his MRSA infection. These strokes have left him unable to effectively communicate. He now has trouble in his movement and needs assistance with activities, such as sitting, putting on his socks and shoes, and walking.

On May 29, 2014, Jobe brought an occupational disease claim before the Commission against Heritage and its surety claiming that his MRSA is a compensable occupational disease that was caused by his employment at Heritage. On June 17, 2014, Heritage filed an Answer denying liability, claiming that Jobe's MRSA was not caused by his employment at Heritage. On March 4, 2016, a hearing was held by Referee Harper to determine the cause of Jobe's MRSA. The medical evidence at this hearing primarily consisted of testimony and reports from three physicians: Dr. Souvenir; Dr. Hull; and Dr. Riedo.

Dr. Souvenir was Jobe's primary infectious disease physician. He testified that it is difficult to assess where people acquire MRSA bacteria. However, he noted that healthcare workers as a general class have an increased incidence of MRSA colonization.[1] Individuals can carry colonized MRSA for years without the bacteria producing an infection. However, when colonized MRSA bacteria enter a person's bloodstream, by, for example, entering through a break in one's skin, it can cause an infection. Nevertheless, in spite of not knowing the source of the MRSA bacteria, Dr. Souvenir felt it was more likely than not that Jobe acquired the bacteria "in the course and scope of his duties as a physician."

Dr. Hull was hired by Jobe to assess the source of the MRSA bacteria that caused his infection. He opined that Jobe "more likely than not acquired the MRSA bacteria which led to his infection from one of the patients he examined" while working at Heritage in the months preceding his infection. Much of his testimony revolved around studies exploring hospital-

---

[1] The term "colonization" refers to a colony of bacteria living on an individual, but producing no symptoms or harm.

caused MRSA infections. For instance, Dr. Hull noted while between 1% and 1.5% of the general public carries colonized MRSA bacteria, approximately 4% to 5% of healthcare workers carry the colonized bacteria.

Dr. Riedo was hired by Heritage to give an independent evaluation as to the cause of Jobe's MRSA. He "did not believe it was possible to establish if [Jobe's] MRSA colonization or infection was acquired in the course of his work" at Heritage. This was partially because Jobe also had other risk factors that would increase his chances of contracting MRSA. Jobe was "over 65, he has exposure to animals, he had multiple surgical procedures and injections over the years, and he had exposure not as a health care worker but as a health care recipient." Accordingly, Dr. Riedo concluded that it was not possible to attribute Jobe's MRSA to his employment at Heritage, as opposed to his exposure to the healthcare system as a patient, his exposure to animals, or to his age.

After reviewing the evidence and testimony, the Referee made his conclusions as to the cause of Jobe's MRSA. With regard to the cause of the infection, he concluded that MRSA bacteria entered Jobe's bloodstream through the cat scratch that occurred on his right hand a few weeks prior to his infection. This conclusion was primarily based on the finding that his right thumb joint was the first area of infection diagnosed and treated for MRSA. With regard to the source of the bacteria that caused the infection, the Referee gave more weight to Dr. Riedo's expert opinion, in that it was not possible to determine if the MRSA bacteria was acquired at Heritage. The Referee stated he was giving Dr. Riedo's opinion more weight because the other expert opinions were based generally on Jobe's occupation and did not explain why Jobe could not have been colonized with MRSA while working as a physician prior to his employment with Heritage. The Referee concluded:

> [I]t cannot be said [Jobe] has produced evidence which establishes that it is more probable than not that he was colonized and infected with MRSA while working for [Heritage] from October 2012 through June 2013. While certainly not all the above-listed events are equally to have been the culprit for [Jobe's] MRSA infection, only one event—[Jobe's] employment with [Heritage]—would allow [him] to obtain compensation under Idaho's workers compensation statutes.

On September 23, 2016, the Commission entered an order adopting the Referee's findings of facts and conclusions of law as its own. The Commission concluded that Jobe "has failed to prove his MRSA infection constitutes a compensable occupational disease caused by his employment with [Heritage]." Jobe timely appeals from the Comission's order.

3

## II.    ISSUE ON APPEAL

1. Did the Commission err by concluding Jobe's MRSA was not a compensable occupational disease?

## III.    STANDARD OF REVIEW

"On appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions, but will not disturb findings of fact if they are supported by substantial and competent evidence." *Steen v. Denny's Rest.*, 135 Idaho 234, 235, 16 P.3d 910, 911 (2000). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prods.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "The conclusions reached by the Industrial Commission regarding the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Excell Constr., Inc. v. State, Dep't of Labor*, 141 Idaho 688, 692, 116 P.3d 18, 22 (2005). This Court "will not re-weigh the evidence or consider whether we would have drawn a different conclusion from the evidence presented." *Estate of Aikele v. City of Blackfoot*, 160 Idaho 903, 908, 382 P.3d 352, 357 (2016) (quoting *Watson v. Joslin Millwork, Inc.*, 149 Idaho 850, 854, 243 P.3d 666, 670 (2010)).

## IV.    DISCUSSION

Jobe's worker's compensation complaint tasked the Commission with determining whether Jobe suffered from a compensable occupational disease. An occupational disease is defined as a disease "due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and are peculiar to the trade, occupation, process, or employment . . . ." I.C. § 72-102(22)(a). An employer is not liable for an occupational disease "unless such disease is actually incurred in the employer's employment." I.C. § 72-439(1). The term "incurred" means "arising out of and in the course of employment." I.C. § 72-102(22)(b).

On appeal, Jobe emphasizes that we have previously held,

> As an occupational disease develops over time, it is possible for the disease to be "incurred" by a claimant under a series of different employers before it becomes manifest. In such a situation, I.C. § 72-439(3) provides that it is the last such employer, or its surety, who is liable to the claimant.

*Sundquist v. Precision Steel & Gypsum, Inc.*, 141 Idaho 450, 456, 111 P.3d 135, 141 (2005). Jobe contends the Commission erred when it failed to apply this Court's guidance in *Sundquist*. We agree.

4

According to the evidence presented to the Commission, two events must occur in order to contract a MRSA infection. First, there must be an access point for the bacteria to enter the body. Second, the MRSA bacteria must be present to enter through the opening in the skin's surface. In this case, the Commission noted, "Individuals can carry colonized MRSA for years without the bacteria producing infection. Skin is an effective barrier for preventing MRSA from causing infection. Often a break in one's skin provides the opening for the bacteria to enter the bloodstream, disseminate, and cause infections." Addressing Jobe's arguments, the Commission determined Jobe failed to prove that the break in his skin through which the MRSA bacteria entered was caused by Heritage. The Commission found that MRSA had entered Jobe's body through a scratch on his hand caused by his cat. In adopting the Referee's proposed findings of fact and conclusions of law the Commission stated as follows:

> When all of the evidence is considered, on a more probable than not basis the Referee finds that [Jobe's] MRSA infection originated at or near [Jobe's] right hand, wrist, or arm. His right thumb joint was the first area of infection diagnosed and treated. He had lymphangitic streaking in the vicinity of his right forearm, indicating drainage of staphylococcal toxins through the lymphatic system in the region of the infection.
>
> . . . .
>
> On the record presented, there is only one likely source of infiltration of the MRSA bacteria—[Jobe's] right hand cat scratch.

We believe there is substantial, competent evidence supporting the Commission's determination of the mechanism by which MRSA was introduced into Jobe's body, that is, "there is only one likely source of infiltration of the MRSA bacteria—[Jobe's] right hand cat scratch."

> However, the Commission then appears to have reasoned that MRSA colonization may itself be an occupational disease and that infiltration was the mechanism by which the occupational disease became manifest. This is evidenced by the Commission stating,
>
> Finding that the MRSA was introduced into [Jobe]'s system through this scratch does not answer the question regarding the source of the bacteria.
>
> . . . .
>
> If the MRSA which infected [Jobe] was introduced into the scratch by a patient of [Heritage], or [Jobe's] work environment, then clearly [Jobe] has proven causation.

Although the Commission entertained the proposition that the MRSA colonization was the occupational disease under consideration, it applied an erroneous legal standard by focusing

solely on Jobe's most recent period of employment at Heritage, to the exclusion of Jobe's past employment as a physician.

Idaho Code section 72-439(3) provides, "Where compensation is payable for an occupational disease, the employer, or the surety on the risk for the employer, in whose employment the employee was last injuriously exposed to the hazard of such disease, shall be liable therefor." In applying this provision in *Sundquist*, we held that because an occupational disease can be incurred over time under a series of different employers, in such a situation, it is the last employer who is liable to the claimant. 141 Idaho at 456, 111 P.3d at 141. In *Sundquist*, the respondent worked as a drywall taper for several different employers before he came to be employed by the appellant in 2002. *Id.* at 452, 111 P.3d at 137. While working for one of these prior employers, the respondent first started experiencing tenderness in his wrist and elbow in 2000. *Id.* This is because working as a drywall taper requires repetitive motions that can cause limiting physical conditions over time. *Id.* In 2002, once respondent became employed by the appellant, his symptoms became worse and he was eventually diagnosed with cubital tunnel syndrome. *Id.* at 452–453, 111 P.3d at 137–138. The respondent then brought an occupational disease claim against the appellant and several of his prior employers. *Id.* at 453, 111 P.3d at 138. The Commission found that the appellant was fully liable for the respondent's occupational disease. *Id.*

On appeal, the appellant claimed that the respondent's "occupational disease was 'incurred' while he was working for a previous employer. [This previous] employer . . . should be liable instead." *Id.* at 455, 111 P.3d at 140. We disagreed stating:

> As an occupational disease develops over time, it is possible for the disease to be "incurred" by a claimant under a series of different employers before it becomes manifest. In such a situation, I.C. § 72-439(3) provides that it is the last such employer, or its surety, who is liable to the claimant. Here, the Industrial Commission found [appellant] to be that last employer within the meaning of I.C. § 72-439(3) and therefore correctly placed liability with [Appellant].

*Id.* at 456, 111 P.3d at 141.

In this case, as in *Sundquist*, Jobe's MRSA colonization could have been incurred under a series of different employers before it manifested during his employment at Heritage. While it is true a MRSA *infection*, which occurs at a single point in time, could not have been incurred through a series of past employers, the MRSA *colonization* could have. Thus, upon considering the colonization as an occupational disease, the Commission was bound to apply the legal

6

standard articulated in *Sundquist*. The Commission did not do so, and in fact, the Commission at several times referred to Jobe's exposure to MRSA in his past employment to validate Heritage's lack of liability, stating,

> All the experts in this matter agree one can be colonized with MRSA for years prior to an infection. . . . Because [Jobe] could come into contact with MRSA at any point in his medical career, which he has pursued since 1961, and once colonized, the bacteria could remain with [Jobe] for years prior to finding its way into his bloodstream, it is not axiomatic that [Jobe's] MRSA was acquired out of and in the course of his employment with Employer.
>
> . . . .
>
> No expert has credibly explained why [Jobe] could not have been colonized with MRSA while working as a physician prior to employment with employer. . . . While there is an increased risk of becoming colonized due to [Jobe's] profession, that risk existed prior to [Jobe's] most recent employment. [Jobe's] employment for years prior to his MRSA infection included work as a hospitalist at various locations, work in a clinic, and at a hospice. All those assignments carry risk for MRSA colonization.
>
> . . . .
>
> Each of [Jobe's] past employments since 2009 carried the risk of colonization.

(internal citation omitted).

Based on the findings detailed above, the Commission determined Jobe had not shown it was more probable than not that Jobe had become colonized with MRSA while employed at Heritage. However, the Commission did not undertake an analysis as to whether the colonization could have been incurred under a series of different employers prior to Jobe's employment at Heritage, thereby contravening *Sundquist*. In fact, the Commission used the possibility of MRSA colonization from a prior employer to Jobe's detriment. Thus, the Commission applied an erroneous legal standard.

In sum, in this case, the Commission was bound to employ *Sundquist* to consider whether Jobe's MRSA colonization could have been incurred through his past employment. Instead, the Commission focused solely on whether Jobe incurred the MRSA colonization at Heritage and found he had not. In so doing, the Commission applied an erroneous legal standard. In light of the Commission's error in this regard, the proper remedy is to vacate and remand for proper application of the governing law. *See, e.g.*, *Rish v. Home Depot, Inc.*, 161 Idaho 702, 706, 390 P.3d 428, 432 (2017) ("Therefore, we vacate and remand for proper application of the governing law . . . ."); *Urry v. Walker & Fox Masonry Contractors*, 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989) ("[I]f a decision, taken as a whole, appears to reflect a misapprehension of law, the

proper appellate response is to vacate the decision and to remand the case for reconsideration in light of the proper legal framework."); *In re Hanson*, 114 Idaho 131, 134, 754 P.2d 444, 447 (1988) (reversing and remanding because the Commission erroneously applied the proper legal test).

## V.    CONCLUSION

We vacate the ruling of the Commission and remand for further proceedings consistent with this opinion.

Justices JONES, HORTON, BRODY and WALTERS, J. Pro tem, **CONCUR.**