## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 41467

| | | |
|---|---|---|
| LUANN SHUBERT, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, January, 2015 Term |
| | ) | |
| v. | ) | 2015 Opinion No. 26 |
| | ) | |
| MACY'S WEST, INC., Employer; LIBERTY | ) | Filed: February 27, 2015 |
| INSURANCE CORPORATION, Surety, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission.

Idaho Industrial Commission order denying motion to reconsider, <u>affirmed.</u>

LuAnn Shubert, Nampa, pro se appellant argued.

Law Offices of Kent W. Day, Boise, for respondents.   Kent W. Day argued.

_____

BURDICK, Chief Justice

This case arose after LuAnn Shubert fell and injured her lower back while working at a Macy's store. Shubert appeals the Idaho Industrial Commission's order holding that she was (1) medically stable on November 21, 2007; (2) not entitled to medical benefits beyond that date; (3) not entitled to temporary disability benefits; (4) entitled to a permanent partial impairment rating of 5% of the whole person; and (5) entitled to a 10% permanent partial disability rating. Shubert argues that she is entitled to ongoing medical care, temporary disability benefits, and total permanent disability benefits over 10%. Macy's West ("Macy's") and Liberty Insurance Corporation ("Liberty") contend that Shubert is rearguing the facts. We affirm the Commission.

### I. FACTUAL AND PROCEDURAL BACKGROUND

LuAnn Shubert worked as a sales associate at a Macy's department store, and her duties included working in various departments as needed. After the store closed on May 1, 2006, Shubert went to retrieve her purse to leave. She tripped on an anti-fatigue mat near the cash register and fell to the floor. Shubert immediately felt pain all over, including in her elbows,

1

hands, feet, knees, hip, and back. She managed to stand up and leave the store that night. The next day, she reported the fall to a supervisor. On May 16, 2006, Shubert asked a manager about that fall report. The manager told her to fill out an incident report.

Shubert waited to see if she would get better on her own. Three months later, she still had pain in her low back and left hip and leg. Shubert told her manager, who told her to go to Primary Health for treatment. Shubert did so, and on August 31, 2006, a nurse practitioner at Primary Health diagnosed a low back strain and left hip pain. An x-ray showed no acute abnormalities. The nurse practitioner restricted Shubert from lifting, pushing, or pulling more than 20 pounds, and attempted to prescribe anti-inflammatory medicine. Shubert would not take the medicine because she believed it would give her a urinary tract infection. Shubert was then referred to the occupational medicine department.

Shubert saw Dr. Scott Lossman in that department on September 6, 2006. He diagnosed a low back strain with sacroiliitis and left leg sciatica. Dr. Lossman prescribed Shubert medication and referred her to physical therapy. He found that she was not at maximum medical improvement ("MMI"). Shubert followed up a month later. Shubert reported slight improvement in pain, but had stopped taking her medications. Dr. Lossman kept his original diagnosis.

A week later, Dr. Lossman saw Shubert again. Shubert reported that she was doing much worse, reporting a 10 out of 10 pain level in her low back and sacroiliac ("SI") joint area that worsened with physical therapy. She indicated that she was not taking any medicine because medicine gives her bladder infections. Dr. Lossman maintained his diagnosis and ordered an MRI. The MRI showed a L4-5 annular disc tear in Shubert's back. Dr. Lossman discussed the MRI with Shubert, telling her that he had run out of treatment options. He referred Shubert to Dr. Nancy Greenwald.

Dr. Greenwald saw Shubert on December 11, 2006. After taking Shubert's medical history, Dr. Greenwald limited Shubert to lifting 30 pounds occasionally, 15 pounds frequently, and 10 pounds continuously. Dr. Greenwald ordered an electromyography ("EMG"). Dr. Greenwald also referred Shubert to physical therapy and prescribed Lidoderm patches. Dr. Greenwald discussed the EMG with Shubert in February 2007. The EMG was normal with a diagnosis of left L5 radiculitis. Shubert complained of left buttock pain and had not yet visited her physical therapist. Dr. Greenwald stressed the importance of physical therapy. About a month later, Shubert saw Dr. Greenwald again. Shubert had begun physical therapy, but Dr.

2

Greenwald saw no improvement in Shubert's condition. Dr. Greenwald also recommended an epidural, which Shubert said she would think about.

In April 2007, Shubert again returned to Dr. Greenwald with pain complaints. One complaint was new: a bilateral stabbing pain in the front of her thighs. Dr. Greenwald ordered an MRI. Shubert followed up the next month. Shubert complained about her old symptoms and of new ones, including calf cramping, left foot swelling, and poor sleep due to pain and cramping. Shubert's MRI showed degenerative changes at L4-5 and L5-S1 with a "broad based disk bulging associated with fissuring or tearing of the left foraminal/far lateral annular fibers." The MRI showed no evidence of a herniated disk or nerve root impingement. Dr. Greenwald then requested an independent medical exam.

Dr. Kevin Krafft conducted that exam on August 9, 2007. He diagnosed left SI joint dysfunction and possible L5 radiculitis. He recommended physical therapy, medicine, and a steroid injection. Dr. Krafft causally connected Shubert's condition to her fall at Macy's. He also stated that Shubert had not achieved MMI. Dr. Krafft wrote a letter to Liberty, stating Shubert's symptoms were more probably than not from the accident and that her condition was not yet stable.

Shubert returned to Dr. Greenwald two months later. Shubert complained of new symptoms, including groin and leg pain. Shubert stated that it was difficult to carry a gallon of milk and hard to bend and kneel at work. Dr. Greenwald discussed an SI joint injection. Shubert said she was not interested. Dr. Greenwald wrote Shubert a prescription for Neurontin, took an x-ray, and suggested more physical therapy. Shubert saw Dr. Greenwald again on November 1, 2007. Shubert had more pain, which she attributed to physical therapy. Dr. Greenwald agreed to stop physical therapy because it had not helped. Shubert had stopped taking Neurontin. Dr. Greenwald instead gave Shubert Lyrica samples.

Shubert again visited Dr. Greenwald on November 21, 2007. Shubert had stopped taking Lyrica because it blistered her lips. Shubert had not done her home exercises because of pain. Dr. Greenwald opined that Shubert had reached MMI. Dr. Greenwald explained that Shubert could have radiculitis on her left side and suggested a diagnostic epidural injection. Shubert refused. Dr. Greenwald then told Shubert she could offer nothing further for pain relief. Dr. Greenwald gave Shubert permanent restrictions of medium work duty and no lifting greater than 35 pounds.

3

The doctor assessed Shubert's injuries at 5% of the whole person because of her difficulties with daily activities and work. Dr. Greenwald advised that Shubert stay on Lidoderm for six months.

Shubert saw additional doctors after November 2007. Shubert saw Dr. Roman Schwartzman in June 2008. Dr. Schwartzman opined that most of Shubert's symptoms came from her annular tear and referred her to Dr. Tyler Frizzell, a neurosurgeon. Shubert saw Dr. Frizzell on July 31, 2008. Based on his review of Shubert's medical documents, Dr. Frizzell opined "on a more probable than not basis, that Ms. Shubert's ongoing left-sided low back, left hip and left leg symptoms are related to her fall on May 1, 2006." He also opined that Shubert was not at MMI. He referred Shubert to Dr. Sandra Thompson for a spinal stimulator trial. Shubert saw Dr. Thompson, but those records are not in the record. Dr. Frizzell wrote to Dr. Thompson after the trial, noting that the stimulator actually hurt and did not help Shubert's symptoms.

Shubert filed a worker's compensation complaint on June 22, 2009. Macy's and Liberty paid for Shubert's treatment up until November 21, 2007, but Shubert sought reimbursement for her medical treatment after November 21, 2007. An Industrial Commission referee heard the case on November 13, 2012. At the hearing, Shubert represented herself.

The referee excluded Shubert's Exhibits D and E. Exhibit D was the Social Security Administration's ("SSA") decision to award Shubert disability benefits. The referee excluded that exhibit because the SSA's system for determining disability was different and because some of the underlying information in the exhibit was confusing as some of the expert reports from the SSA hearing were not in the record. Exhibit E was letters testifying to Shubert's condition before and after her accident, which the referee excluded as hearsay.

Both Shubert and her husband testified at the hearing. Shubert did not have any medical experts testify. After the hearing, both parties filed briefs. The referee held that Shubert was medically stable on November 21, 2007, and therefore not entitled to temporary disability benefits and medical benefits beyond that date. The referee also held Shubert was entitled to a 5% of the whole person permanent partial impairment rating and a 10% permanent partial disability rating. The Commission later approved, confirmed, and adopted the referee's findings of fact. Shubert filed a motion to reconsider, which the Commission denied.

Shubert filed her notice of appeal on October 18, 2013. On December 13, 2013, the Commission certified the record. Shubert filed an objection to the record, arguing the

4

Commission should include Exhibits D and E in the agency record on appeal. The Commission granted Shubert's request. In April 2014, the Commission again certified the agency record as complete.

## II. STANDARD OF REVIEW

On appeal, we review whether the Commission's findings of fact are supported by substantial and competent evidence. *Eckhart v. Indus. Special Indem. Fund*, 133 Idaho 260, 262, 985 P.2d 685, 687 (1999). The Commission's findings are binding on this Court when supported by substantial and competent evidence. *Dean v. Dravo Corp.*, 97 Idaho 158, 161, 540 P.2d 1337, 1340 (1975). Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion. *In re Wilson*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). We will not disturb the Commission's findings on the weight and credibility of the evidence unless those conclusions are clearly erroneous. *Id.* at 165, 911 P.2d at 758. This Court may set aside the Commission's order when the findings of fact do not as a matter of law support the order. I.C. § 72-732. We exercise free review over the Commission's legal conclusions. *McNulty v. Sinclair Oil Corp.*, 152 Idaho 582, 585, 272 P.3d 554, 557 (2012).

## III. ANALYSIS

Shubert appeals the Industrial Commission's order that she was (1) medically stable on November 21, 2007; (2) not entitled to medical benefits beyond that date; (3) not entitled to temporary disability benefits; (4) entitled to a permanent partial impairment rating of 5% of the whole person; and (5) entitled to a 10% permanent partial disability rating. She also appeals the Commission's order denying Shubert's motion to reconsider.

Shubert argues the Commission's decisions did not properly apply the law to the evidence and the Commission's findings are unsupported by substantial and competent evidence. She also contends that the referee erroneously excluded evidence she offered at her hearing.

### A. This Court will not consider whether the referee erred in excluding Shubert's exhibits.

The referee excluded Shubert's Exhibits D and E at her hearing. Exhibit D was the SSA decision to grant Shubert disability benefits. Exhibit E was letters testifying about Shubert's health before and after her accident.

Shubert's arguments on appeal rely on these two exhibits. In her opening brief, Shubert contends that both exhibits were admitted back into the record on appeal. She then argues, based in part on her perception that this Court could consider these exhibits, that substantial and

competent evidence does not support the Commission's order. However, Shubert's opening brief never argues the referee erred when he excluded these exhibits. She waits until her reply brief to make that argument. Idaho Appellate Rule 35(a)(6) requires the appellant's brief "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." We only consider issues supported by argument and authority in the opening brief. *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006). The appellant cannot raise new issues in the reply brief. *Id.* Therefore, Shubert did not raise the issue of whether the referee erred by excluding Exhibits D and E.

Also, those exhibits are not something this Court considers to determine whether substantial and competent evidence supports the Commission's order. The Court is "restricted to and must decide the case *on the record*." *Rivera v. Johnston*, 71 Idaho 70, 75, 225 P.2d 858, 860 (1950) (emphasis in original). In reviewing the Commission's decision, this Court reviews the Commission's order with the record that was before the Commission. *See Carey v. Lafferty*, 59 Idaho 578, 583, 86 P.2d 168, 170 (1938) (stating parties are bound by the record they make in the trial court). The Commission augmented the agency record to include both exhibits in the appellate agency record on Shubert's request under I.A.R. 28(b)(1)(J), which requires that the record in a civil case include a "list of all exhibits offered, whether or not admitted." While both exhibits were included in the record on appeal, neither was admitted before the Commission. Thus, this Court will not consider these exhibits in determining whether the Commission's order is supported by substantial and competent evidence.

**B. Substantial and competent evidence supports the Commission's order.**

Shubert argues that the Commission's order is not supported by substantial and competent evidence. Throughout this argument, Shubert contends the Commission considered erroneous facts. Some of Shubert's alleged erroneous facts are that Shubert refused medicine, did not participate fully in physical therapy, and did not seek help from the surety after the MMI date. Shubert cites the following: "When erroneous evidence is considered in arriving at a factual decision, particularly where the ultimate factual issue is close, the case should be remanded to the fact finder to reconsider the factual issue without the erroneous evidence." *Kiele v. Steve Henderson Logging*, 127 Idaho 681, 685, 905 P.2d 82, 86 (1995). However, Shubert's alleged erroneous facts are simply facts that Macy's and Liberty choose to emphasize

in their brief, but are not facts addressing the main issue in the Commission's decision. That main issue was the Commission's finding that Dr. Greenwald's opinion that Shubert was medically stable was persuasive. In addition, the record has substantial evidence supporting Shubert's alleged erroneous facts. Hence, Shubert's argument fails. We therefore focus on whether substantial and competent evidence supports the Commission's order denying medical benefits after November 2007, denying temporary disability benefits, and giving a 10% permanent disability rating.

1. <u>Substantial and competent evidence supports the Commission's finding that Shubert was at MMI in November 2007.</u>

The Commission found Shubert was at MMI and medically stable on November 21, 2007, the day that Dr. Greenwald determined Shubert was at MMI. The Commission noted that it found Dr. Greenwald's records persuasively established that date and commented that the records Shubert produced were insufficient to challenge Dr. Greenwald's medical stability determination. MMI is relevant to questions of permanent impairment, permanent disability, and temporary income benefits. *Hernandez v. Phillips*, 141 Idaho 779, 781, 118 P.3d 111, 113 (2005).

Shubert argues that she was not at MMI on November 21, 2007, because several experts testified that she was not. Aside from the excluded SSA disability decision that we will not consider, Shubert relies on opinions from Dr. Krafft and Dr. Frizzell. Dr. Krafft commented that he believed Shubert was not at MMI on August 9, 2007, just three months before Dr. Greenwald found Shubert at MMI. Further, Dr. Frizzell stated that he did not find Shubert at MMI on July 31, 2008. This was almost a year after Dr. Greenwald's MMI date of November 21, 2007.

The Commission is free to determine the weight given to medical evidence. "The Commission, and not the Supreme Court, evaluates the credibility of expert witnesses and the weight of evidence." *Hart v. Kaman Bearing & Supply*, 130 Idaho 296, 299, 939 P.2d 1375, 1378 (1997) (internal citations omitted). The Commission stated that it found "Dr. Greenwald's records persuasively establish a November 2007 date of medical stability, and the piecemeal medical records provided by Claimant to illustrate the care she received after November 21, 2007 are only successful in suggesting that her complaint remained largely unchanged." In other words, the Commission found Dr. Greenwald's determination of MMI was persuasive and therefore chose not to accept Dr. Frizzell's later MMI date. Further, Dr. Krafft's August 2007 opinion indicates that Dr. Greenwald could have easily found Shubert at MMI just a few months

7

later. Dr. Krafft wrote that "[o]ver time, there may be some change, however, further recovery or deterioration is not anticipated." Indeed, Dr. Greenwald saw Shubert eight times over the course of almost a year. Dr. Greenwald was familiar with Shubert's care and her medical progress. Thus, substantial and competent evidence in the record supports the Commission's decision.

Shubert tries to bolster the credibility of Dr. Frizzell's opinion by pointing out that Dr. Frizzell examined her, took a medical history, and reviewed her records. Even if this Court had a question about medical stability, we are not fact finders and examine the Commission's findings strictly for substantial and competent evidence. *Hernandez*, 141 Idaho at 782, 118 P.3d at 114. Conflicting expert opinions do not require us to set aside the Commission's decision because the Commission is not required to accept one side's evidence over conflicting evidence. *Id.* Because Dr. Greenwald's assessment provides evidence a reasonable mind might accept to support a November 21, 2007 MMI date, we find substantial and competent evidence supports the Commission's MMI date.

2. <u>Substantial and competent evidence supports the Commission's finding that Shubert was not entitled to medical benefits beyond the MMI date.</u>

Employers must provide injured employees "reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter." I.C. § 72-432(1). In other words, Idaho Code section 72-432(1) "requires the employer to pay for the costs of reasonable medical treatment required by the employee's physician." *Sprague v. Caldwell Transp., Inc.*, 116 Idaho 720, 721, 779 P.2d 395, 396 (1989). We have held that treatment is reasonably required by the employee's physician when three circumstances are present:

> a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice the charges for which were fair, reasonable and similar to charges in the same profession.

*Hipwell v. Challenger Pallet & Supply*, 124 Idaho 294, 298, 859 P.2d 330, 334 (1993) (quoting *Sprague*, 116 Idaho at 722–23, 779 P.2d at 397–98). Causation cannot be presumed. *Gomez v. Dura Mark, Inc.*, 152 Idaho 597, 603, 272 P.3d 569, 575 (2012). The claimant's burden is to prove to a reasonable degree of medical probability that the injury she claims benefits for is causally related to an accident occurring in the course of employment. *Hart*, 130 Idaho at 299, 939 P.2d at 1378. The claimant must prove causation by expert medical testimony. *Id.*

8

The Commission found that Shubert could not prove that treatment was reasonable because Shubert made no improvement from the treatment and provided no reason why the treatment after November 21, 2007, was likely to improve her condition. The Commission also found Dr. Frizzell's records did not provide a well-reasoned analysis that connected Shubert's fall at Macy's to a specific injury and that specific injury to her pain.

Substantial evidence shows Shubert was not improving from the treatment because none of Shubert's medical records after November 2007 indicated that she was getting better. Even though Shubert saw Dr. Thompson for a spinal stimulator trial in 2008, Dr. Frizzell admitted that the trial did not improve Shubert's condition. Further, many of Shubert's physicians prior to her MMI date opined that she was not getting any better with treatment. Shubert herself admitted at her hearing and in her appellate brief that her pain was not improving. Thus, the medical records and Shubert's testimony in this case are evidence a reasonable mind could accept to find Shubert had not gradually improved. Substantial and competent evidence in this case supports the Commission's finding that Shubert did not improve. Consequently, we affirm the Commission's denial of medical cost reimbursement after November 21, 2007.

In addition, the Commission found Shubert's proof of causation for her expenses after the Commission's MMI date was incomplete. Shubert argues that she showed causation through referrals for treatment post-MMI with ongoing medical complications. Shubert contends that she proved causation with numerous medical reports that showed she had an annular tear.

The Commission noted that Shubert submitted many medical bills that were not associated with any medical records or testimony in this case. Because Shubert did not support those bills with medical records or testimony, it is impossible to link those charges with reasonable treatment related to Shubert's fall at Macy's. Therefore, the Commission properly noted Shubert could not recover for those charges.

The Commission stated that Dr. Frizzell was the only doctor after November 2007 who attempted to causally relate Shubert's treatment to her injury at Macy's. The Commission found Dr. Frizzell's analysis was incomplete at best because it was not well-reasoned and did not connect Shubert's "accident to a specific injury and this specific injury to her pain, nor any medical rational justifying his recommendation in light of Claimant's history."

While Dr. Frizzell does not provide an exhaustive causation analysis, Macy's and Liberty provided no evidence after Dr. Greenwald's November 2007 MMI opinion that Shubert's

9

ongoing pain was not causally related to her accident. While the Commission found Dr. Greenwald persuasive, her opinion focused on medical stability in November 2007, not whether any later pain would be causally connected to Shubert's injury. Dr. Frizzell was a medical expert who examined Shubert and linked the accident to her injury and the injury to her pain. Dr. Frizzell's opinion on the cause of Shubert's pain was consistent with the finding that her back pain came from her Macy's injury. Thus, the Commission incorrectly opined that Shubert failed to meet her burden of proof as to causation for Dr. Frizzell's treatment.

The Commission also incorrectly focused on whether Dr. Frizzell's treatment was necessary. The Commission stated that Dr. Frizzell had not articulated a medical rationale for recommending the spinal stimulator trial and therefore had not proven Shubert's treatment "was reasonably medically necessary." The Commission also stated that there was no reason *why* a spinal stimulator was likely to improve Shubert's condition. These statements focused on necessity, not whether Dr. Frizzell required the treatment or whether the treatment was within his standard of practice.

"It is for the physician, not the Commission, to decide whether the treatment is required." *Sprague*, 116 Idaho at 722, 779 P.2d at 397. The Commission is only entitled to determine whether treatment was reasonable, not whether treatment was necessary. *Id.* at 721, 779 P.2d at 396. Despite this problem in the Commission's reasoning, because Shubert did not make any gradual improvement from treatment after November 2007, substantial and competent evidence supports the Commission's denial of her medical benefits after November 21, 2007.

3. <u>Substantial and competent evidence supports the Commission's finding that Shubert was not entitled to temporary disability benefits.</u>

Injured workers are entitled to temporary disability benefits during a "period of recovery." I.C. § 72-408. This period "ends when the worker is medically stable." *Hernandez*, 141 Idaho at 781, 118 P.3d at 113 (citing *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 586, 38 P.3d 617, 624 (2001)). "Medical stability" is synonymous with "maximum medical improvement." *Id.* Once the injured worker is medically stable, she is no longer entitled to temporary benefits and must seek permanent disability benefits. *Id.*

The Commission found Shubert was not in a period of recovery after November 21, 2007, so she was not entitled to temporary disability benefits. The Commission found that Dr. Greenwald's records persuasively established a November 2007 medical stability date and Shubert's records did not change that determination. As discussed above, substantial and

10

competent evidence supports the Commission's MMI date. Therefore, Shubert was medically stable on November 21, 2007, and the Commission properly determined Shubert is not entitled to temporary disability benefits.

Shubert argues she is entitled to temporary disability benefits because she is still in a period of recovery due to her continuing pain and new symptoms. In *McGee v. J.D. Lumber*, 135 Idaho 328, 333, 17 P.3d 272, 277 (2000), we noted that definitions of medical stability in other states would inform our analysis. We cited Oregon's definition of "medically stationary" as "no further material improvement would reasonably be expected from medical treatment, or the passage of time." *Id.* (citing *Clarke v. SAIF Corp.*, 852 P.2d 208 (Or. Ct. App. 1993)). We noted New Mexico defines "maximum medical improvement" as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider." *Id.* (citing *Smith v. Cutler Repaving*, 974 P.2d 1182, 1184 (N.M. 1999)). Further, in Arizona "[m]edical stability sets the time at which a temporary impairment or disability ends and a determination of a permanent disability occurs." *Id.* (citing *Tsosie v. Industrial Comm'n of Arizona*, 905 P.2d 548, 549 (Ariz. 1995)).

Under these definitions, a person can be medically stable and still have symptoms and pain from her injury as long as no further material improvement is expected with time or treatment. After a person is medically stable, the employer no longer compensates her for treatment and no longer pays temporary disability benefits. Instead, the employer must pay any awarded permanent disability benefits based on the employee's disability rating. This is exactly what happened here. Thus, Shubert's continued pain is not evidence supporting a lack of medical stability.

4. <u>Substantial and competent evidence supports the Commission's finding that Shubert was entitled to a permanent partial disability rating of 10%.</u>

A person is permanently disabled "when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72-423. The Commission evaluates whether a worker is permanently disabled by considering the worker's ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by non-medical factors in Idaho Code section 72-430. I.C. § 72-425. Idaho Code section 72-430 requires the Commission to consider many factors, including the nature of the physical

11

disablement, the employee's occupation, her age at the time of accident, and her diminished ability to compete in an open labor market within a reasonable geographical area considering all personal and economic circumstances. The Commission may also consider other relevant factors. I.C. § 72-430. The claimant bears the burden of proving she is permanently disabled. *Boley v. Indus. Special Indem. Fund*, 130 Idaho 278, 281, 939 P.2d 854, 857 (1997).

The Commission found Shubert was entitled to permanent disability benefits. The Commission found that Shubert had a 10% permanent disability, which included the 5% permanent partial impairment that Dr. Greenwald attributed to her accident. The Commission noted Shubert's non-medical factors, but stated that her primary limiting factor was her claimed chronic pain. The Commission found Shubert was denied "a sizeable portion of the pre-injury labor market" based on Dr. Greenwald's permanent lifting restriction of 35 pounds coupled with her non-medical limitations. The Commission then stated that "[i]n light of the fact Claimant can still perform many jobs for which she is best suited, but mindful of that portion of the potential job market from which she is excluded by her accident, . . . Claimant has provided she suffers permanent disability of 10%, inclusive of her permanent impairment."

Shubert argues that she was permanently disabled because she can no longer work. Shubert notes her own testimony that she struggled with daily tasks and her husband's testimony that she was constantly in pain. Shubert argues that she should be entitled to a permanent disability rating over 10%.

Despite this conflicting evidence, substantial and competent evidence supports the Commission's finding. The Commission found Shubert's permanent partial impairment from the injury was 5%, which Shubert did not dispute on appeal. While Shubert reported so much pain she was incapable of working, Dr. Greenwald gave her a lifting restriction of 35 pounds. Dr. Greenwald's restrictions indicated that Shubert could still work in some capacity, which supports the Commission's finding that she "can still perform many jobs for which she is best suited." Further, Shubert provided no testimony from a vocational expert stating how much of the labor market was no longer accessible to her. While Shubert relies on a vocational expert from the SSA's decision, that report was not in evidence before the Commission. She also did not provide evidence that clearly indicates a different disability rating. The Commission considered Shubert's physical impairment and non-medical factors, arriving at a 10% permanent disability rating based upon that information. The record contains evidence a reasonable mind would

12

accept to support that decision. Thus, substantial and competent evidence supports the Commission's decision.

## C. The Commission did not abuse its discretion when it denied Shubert's motion for reconsideration.

Shubert also appeals the Commission's denial of her motion to reconsider. We review the Commission's decision to deny a motion for reconsideration using an abuse of discretion standard. *Hope v. Indus. Special Indemn. Fund*, 157 Idaho 567, ___, 338 P.3d 546, 553 (2014).

In its order denying reconsideration, the Commission reiterated that it found Dr. Greenwald persuasive, while recognizing Dr. Frizzell's opinion that Shubert was not medically stable in July of 2008. The Commission noted that it had considered the conflicting medical evidence, including Dr. Frizzell's recommendations and treatments. The Commission stated:

> Dr. Greenwald provided thoughtful, diligent care over a significant period of time, much of which Claimant refused outright, or simply failed to follow through on. Dr. Greenwald's records and reasoning for Claimant's treatment and the date of medical stability were discussed below in the Commission's decision, and found persuasive. It is worth noting that although Dr. Frizzell did opine in July of 2008 that Claimant was not medically stable and was a candidate for a spinal stimulator trial, that trial, when conducted by Dr. Thompson, did nothing to alleviate Claimant's symptoms. Although Dr. Frizzell proposed yet more testing, we find, on balance, that Dr. Greenwald correctly found that further treatment/testing would not be efficacious.

The Commission noted that Shubert never provided expert testimony about a permanent disability rating beyond Dr. Greenwald's 5% permanent partial impairment rating, so she had not proven a higher rating.

Shubert did not present any legal basis to reverse the Commission's order. Indeed, the Commission's denial of Shubert's motion to reconsider simply articulated and bolsters the Commission's reasoning for the findings in its original decision. In short, the Commission found Dr. Greenwald persuasive, and Shubert did not provide evidence that could outweigh that credible opinion. Thus, we affirm the Commission's denial of Shubert's motion to reconsider.

## IV. CONCLUSION

We affirm the Industrial Commission's order and denial of Shubert's motion to reconsider. Costs to Respondents.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**