## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42589

SOHAR CHAVEZ,

    Claimant-Respondent,

v.

KEVIN STOKES,

    Defendant-Appellant.

_____

)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2015 Term

2015 Opinion No. 64

Filed: July 7, 2015

Stephen W. Kenyon, Clerk

Appeal from the Industrial Commission of the State of Idaho.

The Industrial Commission's order is <u>affirmed</u>.  Costs and fees on appeal are <u>awarded</u> to respondent.

Bowen & Bailey, LLP, Boise, attorneys for appellant. R. Daniel Bowen argued.

Richard S. Owen, Owen & Farney, Nampa, attorneys for respondent. Richard S. Owen argued.

_____

W. JONES  Justice.

### I.  NATURE OF THE CASE

Appellant Kevin Stokes employed Respondent Sohar Chavez as a part-time irrigator on Stokes's farm. During the course of his employment, Chavez was injured when his finger slipped into the chain of a motor on an irrigation line. Life Flight Network (Life Flight) transported Chavez from the area of Fruitland/Payette, Idaho, to Saint Alphonsus Regional Medical Center (Saint Alphonsus) in Boise, Idaho. Chavez's finger could not be reattached, and a physician at Saint Alphonsus amputated it. A few days after the injury, Life Flight billed Chavez $21,201.00 for the transport. Chavez then filed a claim for worker's compensation. Stokes, as the employer of Chavez, was uninsured for purposes of worker's compensation law, but has paid all medical expenses related to the injury except the Life Flight bill, which he has disputed, contending that the transport was unreasonable. The Idaho Industrial Commission (the Commission) determined

1

that the Life Flight transport was reasonable under Idaho Code section 72-432(1). Stokes appeals to the Court. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Stokes owned a farm in Fruitland and employed Chavez as a part-time irrigator. On September 8, 2012, around 5:00 p.m., Chavez suffered a partial amputation of his left pinky finger when his hand slipped into the chain of a motor on an irrigation line on one of Stokes's properties in the Fruitland/Payette area. Chavez drove himself to the home of an off-duty Payette County police officer, who called 911. Stokes received a call from Payette County Dispatch informing him of Chavez's injury.

Stokes arrived at the police officer's residence, as did the County Paramedics for the City of Fruitland/Payette (the paramedics). The paramedics observed that Chavez had vomited and was writhing, moaning, and appeared in considerable pain. The Prehospital Care Report by a paramedic at the scene stated:

> S- Requested to respond . . . for a male patient with a partial amputation of his left pinkie finger. Patient is a 49 year old male . . . . Patient is Spanish speaking only and is unable to state how the injury occurred nor offer and [sic] subjective information. Bystander an off duty Payette County Police Officer reports that patient came driving up to his residence in a vehicle and showed him his injury. Off Duty Payette County Paramedics EMT reports that that [sic] the patient has vomited once since his arrival with the patient. Bystander then called 911. . . .

> O- Arrived on location. . . . Noted an off duty EMT elevating left hand.
> PRIMARY: Patient presented conscious and alert, patient is not able to answer questions due to language barrier. Patient is writhing and moaning and appears to be in considerable pain. . . .
> SECONDARY: . . . . left pinkie finger at the first knuckle is severely lacerated and appears fractured[.] No active bleeding present. Noted strong regular bounding radial pulses.

> A- Traumatic injury to left pinkie finger.

> P- Off duty Payette County Paramedics EMT land-lines Medic 20 and advises finger may be able to be surgically fixed. Life Flight Network is requested to launch. . . . Left pinkie finger was bandaged and secured . . . . Life Flight crew arrives. Patient care transferred to crew with a full verbal report. Medic 20 cleared.

Life Flight transported Chavez to Saint Alphonsus, but his finger could not be reattached. Hand specialist Mark Clawson, M.D., amputated the finger.

On September 12, 2012, Life Flight sent Chavez a statement with a due balance of $21,201.00 for the transport. On October 10, 2012, Chavez filed a complaint for worker's

2

compensation. On December 17, 2012, Stokes filed an amended answer. Stokes conceded that all reasonable and necessary medical expenses were due to Chavez as his employee, but Stokes disputed whether the Life Flight transport was reasonable and necessary under Idaho Code section 72-432(1).

The Commission assigned the matter to Referee Michael E. Powers, who held a hearing on October 30, 2013. Relevant here, Stokes submitted into evidence a letter by an orthopedic surgeon in Boise, Paul C. Collins, M.D. Dr. Collins opined:

> Having reviewed the case and specifically, as an example, the x-ray report . . . , it is evident that this is a 5th finger crushing/tearing type injury that was not in any way, shape or form, life critical. For that reason I do not understand why Life Flight was called or addressed in the first place, and why the case was not taken to Holy Rosary. Indeed, it is extremely reasonable that the patient would be taken physically to Holy Rosary Hospital. Had there been an incident which may in some way benefitted from a vascular reconstruction, then the patient could be transferred to St. Alphonsus or St. Luke's. Indeed, this was in no way necessary.
>
> Again, it would appear to me, quite clearly, that the patient should have been taken by ambulance or other vehicle directly to Holy Rosary Hospital for an initial assessment there. I do not see how this was justified relative to a helicopter trip.

On March 10, 2014, the Referee issued his Findings of Fact, Conclusions of Law, and Recommendation. The Referee recognized that the sole issue was whether the Life Flight transport of Chavez to Saint Alphonsus constituted reasonable medical care under Idaho Code section 72-432(1). The Referee concluded that no evidence in the record demonstrated that it was reasonable or necessary to transport Chavez with Life Flight from the Fruitland area to Boise "based on an apparent misconception that [his] small fingertip could be salvaged." Further, the Referee found: "Even if it could have been salvaged, there is no evidence that such could not have been accomplished at Holy Rosary or [if the finger could not have been salvaged] that arrangements could not have been made to transfer him to St. Alphonsus."

After receiving the Referee's recommendation, the Commission requested supplemental briefing.[1] On September 26, 2014, the Commission issued its Findings of Fact, Conclusions of

---

[1] The Commission asked the parties: "If the Commission determines that the treatment is unreasonable, thus freeing Employer from the obligation of payment, is the Claimant exposed to civil action for collection of the bill?" The Commission also asked:

> How is this case different than the following scenario: Claimant suffers a compensable low back injury. Medical care is provided up to a point, but surety eventually denies further care. Claimant goes off on his own and receives extensive additional care. Later, he seeks the Commission's determination that such care was needed and reasonable. The Commission finds the

Law, and Order. The Commission did not adopt the Referee's recommendation. The Commission determined: "The treatment Claimant received from Life Flight following his industrial accident on September 8, 2012[,] was reasonable under Idaho Code section 72-432(1)." Stokes appeals to this Court.

## III. ISSUES ON APPEAL

1.   Whether the Commission erred by finding that Chavez's Life Flight transport for a work-related injury was reasonable under Idaho Code section 72-432(1).

2.   Whether Chavez is entitled to attorney's fees on appeal.

## IV. STANDARD OF REVIEW

The Court reviews the Commission's findings of fact for substantial and competent evidence. *Shubert v. Macy's West, Inc.*, 158 Idaho 92, 98, 343 P.3d 1099, 1105 (2015). "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Id.* "Substantial and competent evidence is more than a scintilla of evidence, but less than a preponderance." *Hope v. Indus. Special Indem. Fund*, 157 Idaho 567, 570, 338 P.3d 546, 549 (2014). "We will not disturb the Commission's findings on the weight and credibility of the evidence unless those conclusions are clearly erroneous." *Shubert*, 158 Idaho at 98, 343 P.3d at 1105. "We exercise free review over the Commission's legal conclusions." *Id.*

## V. ANALYSIS

**A.   The Commission did not err by finding that Chavez's Life Flight transport was reasonable medical treatment under Idaho Code section 72-432(1).**

Idaho Code section 72-432(1) provides:

Subject to the provisions of section 72-706, Idaho Code, the employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

---

care was unreasonable. Would anybody argue that Claimant is not on the hook for the expenses in question? Does it matter that in one scenario Claimant sought the care, while in the other it was simply provided?

The Commission finally posited: "We appreciate that the provider [Life Flight] appears disinterested in getting paid, but if Employer is relieved of responsibility for payment, is it appropriate to conclude that provider is foreclosed from other remedy [sic]?" The Commission did not discuss their supplemental questions in its order.

4

I.C. § 72-432(1). In this case, the primary issue is whether Chavez's Life Flight transport was reasonable medical treatment under Idaho Code section 72-432(1). If so, Stokes is obligated to provide for such treatment.

This issue presents us with the opportunity to clarify the appropriate considerations to determine whether a claimant's treatment is reasonable. In *Sprague v. Caldwell Transportation, Inc.*, 116 Idaho 720, 779 P.2d 395 (1989), the Court examined three factors to determine the reasonableness of the claimant's treatment. Since *Sprague*, the Court has used these three factors for its reasonableness inquiry, but we are persuaded that these factors should not be considered the exclusive test for reasonableness of medical treatment. Moreover, we hold that the Commission's determination of reasonableness should be reviewed by this Court as a finding of fact under the substantial and competent evidence standard, not as a question of law subject to free review.

In *Sprague*, the claimant argued that the employer's surety was obligated to pay for his chiropractic treatment for a back injury. *Id.* at 720–21, 779 P.2d at 395–96. Although the referee found that the claimant "made gradual improvement" during the period of treatment and that the charges for the treatment "were fair, reasonable and similar to others in the same profession," the referee reasoned that the claimant's accident and injury "did not necessitate the type of care" provided by the chiropractor. *Id.* at 721–22, 779 P.2d at 396–97. Therefore, the referee concluded that the treatment was not reasonable and the surety was not obligated to pay for the treatment. *Id.* at 721, 779 P.2d at 396. The Commission adopted the referee's findings of fact, conclusions of law, and order in its entirety. *Id.*

This Court reversed. *Id.* at 720, 779 P.2d at 395. The Court distinguished between findings of fact pertaining to the claimant's treatment and the conclusion of law that the treatment was unreasonable. *Id.* at 722–23, 779 P.2d at 397–98. The Court emphasized three facts as "beyond cavil or dispute": "a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice the charges for which were fair, reasonable and similar to charges in the same profession." *Id.* The Court then explained that the Commission's finding that the claimant's accident and injury did not necessitate the type of care provided by the chiropractor "incorrectly focuse[d] on the necessity of the treatment, rather

5

than on whether it was reasonable and was required by [the claimant's] physician." *Id.* at 722, 779 P.2d at 397. The Court stated:

> I.C. § 72-432(1) obligates the employer to provide treatment, if the employee's physician requires the treatment and if the treatment is reasonable. It is for the physician, not the Commission, to decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision is whether the treatment was reasonable.

*Id.* Based on its interpretation of Idaho Code section 72-432(1), the Court determined that the Commission exceeded its authority by basing its legal conclusion of reasonableness on its finding that the treatment was not necessary. *Id.* In light of the three undisputed facts, the Court held that the Commission's legal conclusion that the claimant's treatment was unreasonable "cannot stand." *Id.* at 722–23, 779 P.3d at 397–98.

Approximately four years later, in *Hipwell v. Challenger Pallet & Supply*, 124 Idaho 294, 859 P.2d 330 (1993), the Court stated that "*Sprague* requires the claimant make 'gradual improvement from the treatment received'" for the employer to be obligated to pay for treatment. *Hipwell*, 124 Idaho at 298, 859 P.3d at 334 (emphasis added) (quoting *Sprague*, 116 Idaho at 722, 779 P.2d at 397). The Court also described *Sprague* as holding:

> I.C. § 72-432(1) "requires the employer to pay for the costs of reasonable medical treatment required by the employee's physician," *Sprague*, 116 Idaho at 721, 779 P.2d at 396, *where three circumstances are present*: "a) the claimant made gradual improvement from the treatment received; b) the treatment was required by the claimant's physician; and c) the treatment received was within the physician's standard of practice the charges for which were fair, reasonable and similar to charges in the same profession." *Sprague*, 116 Idaho at 722–23, 779 P.2d at 397–98.

*Hipwell*, 124 Idaho at 298, 859 P.3d at 334. Thus, *Hipwell* strongly suggested that *Sprague*'s three-factor test was the exclusive method to determine reasonableness. Subsequent cases have applied or referenced this three-factor test. *See Shubert*, 158 Idaho at 100–01, 343 P.3d at 1107–08; *Harris v. Indep. Sch. Dist. No. 1*, 154 Idaho 917, 928, 303 P.3d 604, 615 (2013); *Magee v. Thompson Creek Mining Co.*, 142 Idaho 761, 766, 133 P.3d 1226, 1231 (2006); *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 585, 38 P.3d 617, 623 (2001).

After careful review, however, we conclude that any indication in our prior cases that the three factors from *Sprague* were the sole means to determine reasonableness was an unsound reading of that opinion. In fact, we overrule *Sprague* to the extent that it stands for the adoption of a specific test for the reasonableness of medical treatment under Idaho Code section 72-

432(1). We also overrule *Sprague*'s holding that the reasonableness of medical treatment is a question of law. This Court's review of the Commission's determination of the reasonableness of the claimant's medical treatment pursuant to Idaho Code section 72-432(1) is a question of fact to be supported by substantial and competent evidence.

Justice Bistline's specially concurring and dissenting opinion from *Hipwell* reflects the appropriate view of *Sprague* and the reasonableness inquiry in Idaho Code section 72-432(1). Justice Bistline, who authored *Sprague*, explained in *Hipwell*:

> The central holding in *Sprague* is that it is not the Commission's function to "decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision [to treat] is whether the treatment was reasonable." 116 Idaho at 722, 779 P.2d at 397. The relevant inquiry is whether that treatment was reasonable. The majority, then, is incorrect in stating that an employer must pay for the costs of reasonable medical treatment required by the employee's physician only when the three circumstances found in *Sprague* are present. To the contrary, an employer must pay for the costs of reasonable medical treatment required by the physician, period. The three circumstances of *Sprague* merely constituted evidence in that case that such treatment was reasonable, not an iron-clad test.
>
> It is thus readily apparent that *Sprague* does not require that the claimant make gradual improvement from the treatment received. Whether the claimant's condition gradually improved should not be determinative of whether treatment is reasonable. Certainly it is conceivable that a course of treatment seemed necessary at the time the doctor prescribed it, even though the patient unfortunately did not improve. The reasonableness of a doctor's determination that treatment is indicated should be measured at the time the doctor prescribes treatment, not by "armchair doctoring" afterwards with the benefit of hindsight.

*Hipwell*, 124 Idaho at 300, 859 P.2d at 336 (Bistline, J., specially concurring and dissenting) (alteration in original). We agree that *Sprague* was limited to the facts of the case. We also agree that the central holding of *Sprague*, which remains valid, is simply: "It is for the physician, not the Commission, to decide whether the treatment is required. The only review the Commission is entitled to make of the physician's decision is whether the treatment was reasonable." 116 Idaho at 722, 779 P.2d at 397.

The Commission's review of the reasonableness of medical treatment should employ a totality of the circumstances approach. We are hesitant to provide specific factors for this fact-specific approach because, as we have seen with *Sprague*, those factors may be later interpreted as definitive in the matter. We note at a minimum, however, that the treatment must be required by the physician, *see id.*, as defined by worker's compensation law, unless it is treatment

7

"needed immediately after an injury or manifestation of an occupational disease." I.C. § 72-432(1). We also caution against a retrospective analysis, which relies on the benefit of hindsight. That kind of analysis would serve only to second-guess the treatment requirement of the physician without a fair consideration of the information known at the time and place of treatment and any exigent circumstances.

In this case, the Commission had substantial and competent evidence for its finding that Chavez's Life Flight transport for his injury was reasonable medical treatment under Idaho Code section 72-432(1). All facts and inferences are viewed in the light most favorable to Chavez, who prevailed before the Commission. *Thrall v. St. Luke's Reg'l Med. Ctr.*, 157 Idaho 944, 947, 342 P.3d 656, 659 (2015). "We will not disturb the Commission's findings on the weight and credibility of the evidence unless those conclusions are clearly erroneous." *Shubert*, 158 Idaho at 98, 343 P.3d at 1105.

In this case, the Commission first found that Chavez was treated by a physician. Idaho's worker's compensation law defines "physician" as:

> medical physicians and surgeons, ophthalmologists, otorhinolaryngologists, dentists, osteopaths, osteopathic physicians and surgeons, optometrists, podiatrists, chiropractic physicians, and members of any other healing profession licensed or authorized by the statutes of this state to practice such profession within the scope of their practice as defined by the statutes of this state and as authorized by their licenses.

I.C. § 72-102(25). The Commission determined that the paramedics and Medic 20 met this definition of "physician" because both paramedics and EMTs are authorized and licensed in the State of Idaho to carry out the practice of emergency care under the supervision of a physician. *See* I.C. § 56-1012(18), (23). This determination has not been challenged on appeal.

Next, the Commission found that a physician, either a paramedic or Medic 20, "made the determination that it was possible to reattach the tip of Claimant's finger and that taking him to St. Alphonsus-Boise was Claimant's best chance of success for the procedure." The Commission also found that the "emergency treatment decision" of the paramedic or Medic 20 was more persuasive than Dr. Collins's opinion on the reasonableness of the treatment because Dr. Collins "was not Claimant's physician, nor was he present or involved in Claimant's treatment." Further, the Commission found that there was no evidence in the record that the Life Flight call for transport "was a mistake." Based on the evidence in the record, the Commission had substantial and competent evidence for these findings. Further, in light of these factual findings, the

Commission had substantial and competent evidence to find that the Life Flight transport was reasonable medical treatment under Idaho Code section 72-432(1). We recognize that the Life Flight transport may be seen as arguably unnecessary with the benefit of hindsight, but the evidence nonetheless supports the Commission's finding that the Life Flight transport was reasonable medical treatment at the time of Chavez's injury.

**B.      We award attorney's fees on appeal to Chavez.**

Chavez requests attorney's fees on appeal pursuant to Idaho Code section 72-804. It states in part: "If the commission or any court before whom any proceedings are brought under this law determines that the employer . . . contested a claim for compensation made by an injured employee . . . without reasonable ground . . . the employer shall pay reasonable attorney fees in addition to the compensation provided by this law." I.C. § 72-804. "Attorney fees and costs are properly awarded when an appeal asks this Court to do nothing more than reweigh the evidence submitted to the Commission." *Spivey v. Novartis Seed Inc.*, 137 Idaho 29, 35, 43 P.3d 788, 794 (2002) (quoting *Duncan v. Navajo Trucking*, 134 Idaho 202, 204, 998 P.2d 1115, 1117 (2000)). In this case, we award Chavez attorney's fees on appeal. Stokes's appeal is without reasonable ground because he is simply requesting that we "reweigh the evidence and reach a different conclusion than the Commission." *Hutton v. Manpower, Inc.*, 143 Idaho 573, 576, 149 P.3d 848, 851 (2006).

## VI. Conclusion

The order of the Commission is affirmed. Attorney's fees and costs on appeal are awarded to Chavez.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.