# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44109

| | |
|---|---|
| PENNY ANN WEYMILLER, | ) |
| | ) |
|     Claimant-Appellant, | )   Boise, June 2017 Term |
| | ) |
| v. | )   2017 Opinion No. 87 |
| | ) |
| LOCKHEED IDAHO TECHNOLOGIES, | )   Filed: July 11, 2017 |
| Employer, and EMPLOYERS | ) |
| INSURANCE OF WAUSAU, Surety, | )   Karel A. Lehrman, Clerk |
| | ) |
|     Respondents. | ) |
| _____ | ) |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>reversed</u>.

Penny Weymiller, Idaho Falls, *pro se* appellant.

Law Office of Kent Day, Meridian, attorneys for respondents.
Matthew J. Vook argued.

_____

JONES, Justice.

## I. NATURE OF THE CASE

Penny Weymiller ("Weymiller"), a former employee of Lockheed Idaho Technologies ("Lockheed"), appeals the Idaho Industrial Commission's (the "Commission") order that she was not entitled to additional medical care in relation to her bilateral carpal tunnel syndrome ("CTS").

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March of 1991, Weymiller began to develop pain in her wrists. On July 28, 1994, Weymiller filed a claim with Employers Insurance of Wausau ("Surety") asserting that she had developed CTS due to data entry involved in her employment. Surety denied the claim. On March 1, 2000, Weymiller, then an employee for Lockheed, filed another claim. On May 30,

1

2000, Surety reevaluated and reversed its previous denial thereby accepting that Weymiller's CTS was related to her work and originally started in 1991. Weymiller was referred to Dr. R. Timothy Thurman, M.D. ("Dr. Thurman"), a hand surgeon in Idaho Falls. Thereafter, Weymiller received medical treatment for CTS including wrist braces, pain medication, and steroid injections. On June 6, 2007, Dr. Thurman performed surgery on Weymiller's left wrist. On September 20, 2007, Weymiller was released to return to work without restrictions. Weymiller did not seek another appointment with Dr. Thurman until May of 2012. She explained why she stopped seeking appointments with Dr. Thurman as follows:

> Well, when I go see Dr. Thurman, there is nothing he can do except – it's not like he can treat me, except for prescription medicine and wrist braces. So the idea that I'm going to take sick leave or vacation time or whatever I need to do and spend time and expense – your [Surety's] expense going back to see Dr. Thurman to say that you have bilateral carpal tunnel. I don't need anybody to tell me that. I know that.

Surety investigated Weymiller's claim because it had been nearly five years since Weymiller had been evaluated by Dr. Thurman. Surety characterized the five year time period as a "gap in treatment." Surety authorized an appointment with Dr. Thurman, but does not appear to have authorized any other treatment at that time, including medication or wrist braces. On October 25, 2012, Dr. Thurman examined Weymiller. On January 13, 2013, Dr. Thurman conducted a follow-up appointment. He diagnosed Weymiller with intermittent carpal tunnel-type symptoms and wrote her a prescription for wrist braces. On August 22, 2013, Weymiller filed a worker's compensation complaint against Surety. Weymiller's complaint was assigned to Referee LaDawn Marsters, who conducted a hearing in Idaho Falls on June 29, 2015. Weymiller represented herself *pro se*. The parties presented oral and documentary evidence at the hearing. Following the hearing, the matter was reassigned to Referee John C. Hummel.

On February 23, 2016, Referee Hummel issued his Findings of Fact, Conclusion of Law, and Recommendation. He concluded that Weymiller had not proven that she was entitled to further medical care because she had not proven, to a reasonable degree of medical probability, a causal connection between her ongoing condition and her occupational exposure. Referee Hummel reasoned as follows:

> Claimant's treating physician, Dr. Thurman, has not given an opinion, to a degree of reasonable medical probability, that Claimant's recurrent CTS symptoms are causally related to her workplace exposure that began in 1991. The Referee has

2

scrutinized the medical records of Dr. Thurman's treatment of Claimant. The records reflect that he consistently diagnosed Claimant with CTS from 2000 to 2014. Nowhere in any of those records did Dr. Thurman state a medical opinion that causally related her CTS symptoms to her accepted occupational exposure. Merely because Dr. Thurman's medical records reflect an ongoing diagnosis of CTS does not provide sufficient evidence for Claimant to meet her burden on medical causation.

. . . .

This case might have had a different result if Claimant had deposed Dr. Thurman as she initially intended, or, at the very least, sought a clear causation opinion from him in writing. As her treating physician, Dr. Thurman might have been able to provide a qualified expert medical opinion as to causation. Such evidence, however, is not before the Commission. Accordingly, Claimant has failed to sustain her burden of proof on causation.

On February 23, 2016, the Commission issued an order approving, confirming, and adopting Referee Hummel's Findings of Fact, Conclusion of Law, and Recommendation. The Commission concluded that "Claimant has not proven her entitlement to additional medical care."

Weymiller appeals.

### III. ISSUE ON APPEAL

1.  Did the Commission err in holding that Weymiller failed to prove her entitlement to additional medical care?

### IV. STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

. . . .

The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

*Rodriguez v. Consolidated Farms, LLC*, 161 Idaho 735, __, 390 P.3d 856, 861 (2017).

3

**A.    The Commission erred in holding that Weymiller failed to prove her entitlement to additional medical care.**

The Commission's decision is not supported by substantial and competent evidence. Idaho Code section 72-432(1), codified as part of Idaho's Worker's Compensation Act, provides as follows:

> [T]he employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter.

I.C. § 72-432(1). In *Rish v. Home Depot, Inc.*, we reversed the Commission's holding that medical care was unreasonable because it "was merely palliative and failed to restore function to any useful degree." 161 Idaho 702, 705, 390 P.3d 428, 431 (2017). When read in conjunction with *Rish*, it becomes clear that the reasonable treatment required by Idaho Code section 72-432(1) includes palliative care. Separately, "an occupational disease claimant has the burden of proving, to a reasonable degree of medical probability, a causal connection between the condition for which compensation is claimed and occupational exposure to the substance or conditions which caused the alleged condition." *Langley v. State, Indus. Special Indem. Fund*, 126 Idaho 781, 786, 890 P.2d 732, 737 (1994) (citing *Hagler v. Micron Tech., Inc.,* 118 Idaho 596, 598, 798 P.2d 55, 57 (1990)). However, a claimant need not prove causation if an employer concedes that the occupational disease was caused by the claimant's employment.

Here, Surety denied Weymiller's 2013 claim for replacement wrist braces because she did not satisfy her burden of proving a causal connection between her CTS and occupational exposure after the "gap in treatment" between 2007 and 2012. This denial was error for two reasons. First, there was no "gap in treatment." The findings adopted by the Commission note that from 2007 to 2012, Weymiller "continued to wear wrist braces at night and during the day." Although Weymiller did not see Dr. Thurman between 2007 and 2012, her use of wrist braces, as palliative care, during that time constituted treatment for her CTS. The wrist braces did not cure her CTS, but they did ease her pain.

Second, Dr. Thurman noted at a 2013 appointment that Weymiller "simply wanted authorization for new wrist braces." Weymiller's claim for replacement wrist braces was merely

a continuation of her CTS claim that was accepted by Surety on May 30, 2000. Indeed, she was not contending that she had some new manifestation of symptoms that required some different type of treatment, nor was there evidence of an intervening injury. Surety conceded that it accepted Weymiller's claim on May 30, 2000 based on an interview with Weymiller in which she stated that she "first developed symptoms of [CTS] at work in 1991 and that those symptoms have always been present since 1991." It is undisputed that she has continuously had symptoms of CTS since 1991. Accordingly, because Surety conceded that Weymiller's CTS was caused by her employment and she has continuously had symptoms of CTS since then without an intervening injury, she need not prove causation. The Commission erred in requiring Weymiller to do so in order to obtain replacement braces.

In sum, the Commission's failure to consider palliative care in the form of wrist braces as treatment is contrary to our holding in *Rish.* The Commission misapplied the law and there was sufficient uncontradicted evidence to support Weymiller's claim for replacement braces.

## VI. CONCLUSION

This Court reverses the Commission's decision. Costs to Weymiller.

Chief Justice BURDICK and Justice EISMANN, CONCUR.

HORTON, J., concurring.

I join in the Court's opinion. I write separately to caution practitioners that this decision has limited precedential value because this Court is not retreating from the well-established line of authority holding that "[t]he claimant's burden is to prove to a reasonable degree of medical probability that the injury she claims benefits for is causally related to an accident occurring in the course of employment" and "[t]he claimant must prove causation by expert medical testimony." *Shubert v. Macy's W., Inc.*, 158 Idaho 92, 100, 343 P.3d 1099, 1107 (2015), *overruled on other grounds by Chavez v. Stokes*, 158 Idaho 793, 353 P.3d 414 (2015).

In my view, our decision is grounded in no small part by the unreasonable position advocated by Respondent. The discussion between Respondents' counsel and Justice Brody, regarding the Surety's previous acceptance of Weymiller's CTS claim in 2000 without supporting medical evidence regarding causation, illustrates my point. Counsel indicated that Surety frequently accepts claims without supporting medical evidence of causation in order to quickly provide claimants benefits "without always having to jump through the hoops." Given

5

Weymiller's long-standing CTS symptomology, Justice Brody asked the reasonable follow-up question.

> JUSTICE BRODY: Why are we making her jump through the hoops today?
>
> RESPONDENTS' COUNSEL: I think it was always our right to be able to make her jump through the hoops.

To the extent that lessons may be drawn from today's decision, they are: (1) this Court takes to heart the proposition that the Idaho Worker's Compensation Act is intended to provide sure and certain relief to an injured worker; and (2) therefore, this Court will not assist a Surety in its insistence on the right to unreasonably deny medical service, including palliative care, to which a claimant is manifestly entitled.

Justice BRODY, CONCURS